**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| In re: | * | **Case No.: 24−11528-DER** |
| **PROVIZOR FEDERAL, INC.,** | * | **Chapter 7** |
| Debtor. | * | |

\* \* \* \* \* \* \*   \* \* \* \* \* \*

| | | |
|---|---|---|
| **MORGAN W. FISHER,** **CHAPTER 7 TRUSTEE** **18 West Street** **Annapolis, MD 21401** | * | **Adv. Proc. No.: _____-DER** |
| Plaintiff, | * | |
| v. | * | |
| **IMPEL CAPITAL MANAGEMENT, LLC** **8115 Maple Lawn Blvd, Suite 350** **Fulton, MD 20759** | * | |
| | * | |
| **SERVE ON:** Impel Capital Management, LLC c/o Resident Agents Inc. 8 The Green, Suite R Dover, DE 19901 | * | |
| | * | |
| Defendant, | * | |
| | * | |
| **OMV HOLDINGS, LLC** **6700 Alexander Bell Drive** **Suite 200** **Columbia, MD 21046** | * | |
| | * | |
| **SERVE ON:** OMV HOLDINGS, LLC c/o The Corporation Trust Incorporated 2405 York Road, Suite 201 Lutherville-Timonium, MD 21093 | * | |
| | * | |
| Defendant, | * | |

| | |
|---|---|
| **CHESTNUT BUSINESS CONSULTING, LLC** | * |
| **233 Massey Circle** | |
| **Chapin, SC 29036** | * |
| | * |
| <u>**SERVE ON**</u>: | |
| CHESTNUT BUSINESS CONSULTING, LLC | * |
| c/o Lonnie Chestnut, Registered Agent | * |
| 106 Kingston Forest Drive | |
| Irmo, SC 29063 | * |
| | |
| **Defendant,** | * |
| | |
| **BW CAPITAL ADVISORS LLC** | * |
| **t/a BW CAPITAL ADVISORS** | |
| **1140 3rd St SE** | * |
| **Washington, DC 20002** | |
| | * |
| <u>**SERVE ON**</u>: | |
| BW CAPITAL ADVISORS LLC | * |
| c/o REGISTERED AGENTS INC. | |
| 1717 N STREET NW, Suite 1 | * |
| Washington, DC, 20036 | |
| | * |
| **Defendant,** | |
| | * |
| **LAMAR BARNES** | |
| **12171 Fulton Estates Court** | * |
| **Fulton, MD 20759** | |
| | * |
| **Defendant,** | |
| | * |
| **LONNIE B. CHESTNUT, III** | |
| **5020 Oxfordshire Rd.** | * |
| **Waxhaw, NC 28173** | |
| | * |
| **Defendant.** | |

*     *     *     *     *     *     *     *     *     *     *     *     *

**TRUSTEE'S COMPLAINT FOR**
**AVOIDANCE AND RECOVERY OF FRAUDULENT CONVEYANCES AND**
**PREFERENCES, FRAUD, BREACH OF DIRECTORS STANDARD OF CARE,**
**BREACH OF DUTY OF LOYALTY, AND BREACH OF FIDUCIARY DUTY**
<u>**(SECTIONS 544, 547, 548 AND 550)**</u>

2

Morgan W. Fisher, Chapter 7 Trustee (the "**Trustee**" or the "**Plaintiff**") for Provizor Federal, Inc. f/k/a OMV Medical, Inc. (the "**Debtor**") brings this Complaint against Defendants Impel Capital Management, LLC ("**Impel Management**"), OMV Holdings, LLC ("**OMV Holdings**"), Chestnut Business Consulting, LLC ("**Chestnut Consulting**"), BW Capital Advisors LLC ("**BW Capital**"), Lamar Barnes ("**Mr. Barnes**") and Lonnie B. Chestnut, III ("**Mr. Chestnut**", together with Impel Management, OMV Holdings, Chestnut Consulting, BW Capital and Mr. Barnes, collectively together, the "**Defendants**"), and states as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff, Morgan Fisher, Chapter 7 Trustee for Provizor Federal, Inc. f/k/a OMV Medical, Inc., is the duly appointed and acting Chapter 7 Trustee for the Debtor.

2. Debtor Provizor Federal, Inc., f/k/a OMV Medical, Inc., is a Maryland corporation.

3. Defendant Impel Capital Management, LLC, f/k/a Impel Capital, LLC is a Delaware limited liability company with a principal place of business located at 8115 Maple Lawn Blvd, Suite 350, Fulton, Maryland 20759. Impel Capital Management is an entity affiliated with or owned by Impel Capital (defined below) and/or Mr. Barnes and Mr. Chestnut individually. Given the overlapping beneficial ownership and control of the Debtor and Impel Management, Impel Management and the Debtor did not transact business at arm's length. Impel Management is an insider of the Debtor.

4. Defendant OMV Holdings, LLC, a Maryland limited liability company with a principal place of business located at 6700 Alexander Bell Drive, Suite 200, Columbia, MD 21046. OMV Holdings is the 100% shareholder of the shares of the Debtor. OMV Holdings was formed on or about April 17, 2021 and is owned by: (i) Impel Capital, LLC ("**Impel Capital**"), a Maryland limited liability company, with a 72.5% interest as Common Member; and (ii) LCMH, LLC, a Wyoming limited liability company, with a 27.5% interest as Class A member. The Board of

3

Managers of OMV Holdings was comprised of Defendants Mr. Barnes and Mr. Chestnut, and non-defendants Dexter Truckers and G. Corey Faustin.  OMV Holdings acquired the Debtor on or about October 7, 2021.  OMV Holdings is an insider of the Debtor.

5.      Chestnut Business Consulting, LLC, a South Carolina limited liability company with a principal business located at 233 Massey Circle, Chapin, SC 29036, is owned and operated 100% by Mr. Chestnut (defined below).

6.      BW Capital Advisors LLC t/a BW Capital Advisors, a District of Columbia limited liability company with a principal place of business located at 1140 3rd St SE, Washington, DC 20002, is owned and operated 100% by Mr. Barnes (defined immediately below).

7.      Lamar Barnes was, for all relevant periods, an owner and principal of OMV Holdings and Impel Management and a director and officer of the Debtor.  Mr. Barnes is an insider of the Debtor.

8.      Lonnie B. Chestnut, III was, for all relevant periods, an owner and principal of OMV Holdings and Impel Management and a director and officer of the Debtor.  Mr. Chestnut is an insider of the Debtor.

9.      This action is an adversary proceeding pursuant to and 11 U.S.C. §§ 502, 544, 547, 548 and 550 of the Bankruptcy Code and Fed. R. Bankr. P. 7001(1).

10.     This Court has jurisdiction over the subject matter of this adversary proceeding pursuant to 28 U.S.C. §§ 157(b) and 1334(b).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (C), (F), (H) & (O).  Venue is proper in this district pursuant to 28 U.S.C. §1409.

11.     Included among the body of creditors of the Debtor are numerous creditors holding unsecured claims allowable under 11 U.S.C. §502 of the Bankruptcy Code or disallowable only under 11 U.S.C. §502(e) and such creditors are authorized as a matter of law to advance the causes

4

of action set forth in this Complaint. Plaintiff is accordingly expressly authorized by 11 U.S.C. §544(b)(1) of the Bankruptcy Code to advance those causes of action by this Complaint.

12.     Plaintiff consents to final orders and judgments by the Bankruptcy Court.

## BACKGROUND AND TRANSFERS[1]

13.     On February 26, 2024 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On May 16, 2024, the Court converted this case to a case under Chapter 7, and Morgan Fisher was thereafter appointed as Chapter 7 Trustee.

14.     According to the Debtor's Voluntary Petition (the "**Petition**"), the Debtor's bankruptcy filing was authorized by its two directors: Barnes, as Chairman, and Chestnut, as Director and Corporate Secretary.  The Petition further provides that OMV Holdings is 100% owner of all shares of the Debtor's stock.

15.     Impel Capital was owned by its two members: Barnes, as managing member, and Chestnut.  Mr. Barnes signed and filed Articles of Cancellation as "authorized person" for Impel Capital on September 13, 2024, falsely certifying it "has no known creditors."[2]

16.     Impel Management, OMV Holdings, Chestnut Consulting and BW Capital are entities to which Mr. Barnes and Mr. Chestnut caused the Debtor to transfer payments (purportedly management fees, consulting fees, distributions, dividends and other fabricated fees).  Upon

---

[1] Plaintiff notes that Defendants abjectly refused to comply with 2004 Orders of this Court to produce documents to the Trustee or appear for deposition. *See* ECF Nos. 442, 443, 464, 465, 466, 467, and 522 in main bankruptcy case.  Accordingly, among other orders of the Court, the Court has authorized the Trustee, after the filing of this Adversary Proceeding, to continue its Rule 2004 discovery process (along with Rule 7026 discovery). *See* ECF No. 548 in main bankruptcy case; January, 23, 2026.  The Trustee further notes that due to Defendants' refusal to comply with the Court's 2004 orders, the Trustee expects that the facts herein will be supplemented by amendments to this Complaint once compliance takes place and discovery proceeds.

[2] Plaintiff reserves the right to file an amended claim to the extent that Impel Capital received transfers from the Debtor.

information and belief, all such funds were ultimately transferred to Mr. Barnes and Mr. Chestnut individually.

17.     On January 1, 2022, the Debtor, by Mr. Barnes as Chief Executive Officer, and Impel Management, by Mr. Chestnut as Managing Partner, entered into a Consulting and Management Services Agreement (the "**Management Agreement**") to retain the general advisory services of Mr. Barnes and Mr. Chestnut, through Impel Management.  Mr. Barnes and Mr. Chestnut then purported to provide consulting services to the Debtor either themselves or through Chestnut Consulting and BW Capital.

18.     Notwithstanding their board and officer positions with the Debtor, Mr. Barnes and Mr. Chestnut caused the Debtor to distribute to entities they owned and/or controlled (the Defendants named herein) substantial, exorbitant sums of the Debtor's operating cash and other Debtor funds under the guise of "distributions", "management fees", "success fees", "consulting fees" or other obligations purportedly owed to them or their entities.  In the aggregate, Mr. Barnes and Mr. Chestnut caused the Debtor to transfer approximately $10.9 million of the Debtor's cash for their benefit.  Mr. Barnes and Mr. Chestnut created elaborate schemes such that these transfers were made to the business entity Defendants herein, then ultimately into their own pockets.

19.     For instance, after the COVID-19 Pandemic, Congress enacted as part of the CARES Act laws allowing for companies to apply for "Employee Retention Credits" (the "**ERCs**") as a refundable tax credit for businesses that paid employees during 2020 and the first three quarters of 2021 while affected by COVID-19 shutdowns or due to significant revenue declines caused thereby.  The ERCs, when refunded, are considered grant-like tax refunds, not loans (*i.e.*, they were distinct from PPP loans which had to be forgiven or repaid).  The ERCs are obtained simply by an entity filing amended payroll tax returns (Form 941-X) following which the IRS will refund to the entity the ERCs.

20.     The Debtor obtained $8,151,247.91 in ERCs, consisting of $2,520,694.99 and $5,630,552.92 deposited into its operating account on March 27, 2023 and July 6, 2023, respectively.  Almost immediately after the Debtor obtained the ERCs, Mr. Barnes and Mr. Chestnut caused the Debtor to transfer nearly the full amount thereof to OMV Holdings and Impel Management.  Thereafter, Mr. Barnes and Mr. Chestnut caused OMV Holdings and Impel Management to transfer and distribute 100% of the ERCs to themselves such that the funds ultimately ended up in their own pockets.  Compounding this illicit behavior, Chestnut Consulting and BW Capital charged the Debtor purported "success fees" for obtaining the ERCs (and potentially other funds), even though the ERCs were obtained simply by the Debtor filing amended payroll tax returns which was done by the Debtor's accountants.  In other words, no consulting was actually required to obtain the ERCs.

21.     Mr. Barnes and Mr. Chestnut, instead of acting as fiduciaries for the Debtor, in every instance, acted in their own personal interests and not that of the Debtor (or its creditors) and drained the Debtor of essentially all its operating capital to line their own pockets.  In essence, Mr. Barnes and Mr. Chestnut treated the Debtor as their personal piggy bank and thus caused the Debtor's demise.  Mr. Barnes and Mr. Chestnut failed to perform their directorate duties in good faith in the best interests of the Debtor that a reasonably prudent person similarly situated would have undertaken.

22.     Mr. Barnes's and Mr. Chestnut's looting of the Debtor was carried out without any formal board meetings or approvals.  Instead, Mr. Barnes and Mr. Chestnut acted in an unchecked frenzy of self-dealing and wanton and reckless breach of fiduciary duty and loyalty to the Debtor, all for their personal benefits.

23.     Within two (2) years of the Petition Date, the Debtor transferred the aggregate sum of $7,757,163.00 to OMV Holdings for no consideration (collectively, the "**OMV 2-Year**

7

Transfers"). Included in the OMV 2-Year Transfers are transfers from the Debtor to OMV Holdings totaling not less than the aggregate sum of $6,500,163.00 for no consideration all made within one (1) year of the Petition Date (collectively, the "**OMV 1-Year Transfers**"). The OMV 1-Year Transfers were made purportedly to pay dividends, distributions, accounts payable, consulting fees, management fees, success fees and/or other sums that OMV Holdings claimed were due from the Debtor. Collectively, the transfers referred to in this paragraph are referred to as the "**OMV Transfers**". *See* List of Transfers, attached hereto as **Exhibit A**.

24. Within three (3) years of the Petition Date, the Debtor transferred the aggregate sum of $3,029,244.00 to Impel Management for no consideration (collectively, the "**Impel 3-Year Transfers**").Within two (2) years of the Petition Date, the Debtor transferred the aggregate sum of $2,894,634.00 to Impel Management for no consideration (collectively, the "**Impel 2-Year Transfers**"). Within one (1) year of the Petition Date, the Debtor transferred the aggregate sum of $1,751,166.00 to Impel Management for no consideration (collectively, the "**Impel 1-Year Transfers**"). Collectively, the transfers referred to in this paragraph are referred to as the "**Impel Transfers**". *See* List of Transfers, attached hereto as **Exhibit A**.

25. Within three (3) years of the Petition Date, the Debtor transferred the aggregate sum of $93,486.00 to Chestnut Consulting for no consideration (collectively, the "**Chestnut Consulting 3-Year Transfers**"). Within two (2) years of the Petition Date, the Debtor transferred the aggregate sum of $35,519.00 to Chestnut Consulting for no consideration (collectively, the "**Chestnut Consulting 2-Year Transfers**"). Collectively, the transfers referred to in this paragraph are referred to as the "**Chestnut Consulting Transfers**". *See* List of Transfers, attached hereto as **Exhibit A**.

26. Within three (3) years of the Petition Date, the Debtor transferred the aggregate sum of $93,938.00 to BW for no consideration (collectively, the "**BW Capital 3-Year**

Transfers"). Within two (2) years of the Petition Date, the Debtor transferred the aggregate sum of $34,515.00 to BW Capital for no consideration (collectively, the "**BW Capital 2-Year Transfers**"). Collectively, the transfers referred to in this paragraph are referred to as the "**BW Capital Transfers**". *See* List of Transfers, attached hereto as **Exhibit A**.

27. Mr. Barnes and Mr. Chestnut were the people for whom the OMV Transfers, Impel Management Transfers, Chestnut Consulting Transfers and BW Capital Transfers were made. Mr. Barnes and Mr. Chestnut were the ultimate recipients of the OMV Transfers, Impel Management Transfers, Chestnut Consulting Transfers and BW Capital Transfers, and were thus the immediate or mediate transferees of all such transfers (collectively, the "**Barnes & Chestnut Transfers**"). *See* List of Transfers, attached hereto as **Exhibit A**.

28. At all relevant times in this Complaint, the Debtor was insolvent. Among other things, in April 2023, Loyal Source Government Services LLC initiated an arbitration against the Debtor, resulting in several monetary awards against the Debtor totaling approximately $12 million.

**COUNT I – AGAINST OMV HOLDINGS, LLC**
**Avoidance and Recovery of the OMV 2-Year Transfers as Actually Fraudulent Under**
**11 U.S.C. §§ 548 and 550 of the Bankruptcy Code**

29. The allegations contained in paragraphs 1 through 28 are incorporated by reference as though fully set forth herein.

30. The OMV 2-Year Transfers were made within two (2) years of the Petition Date. OMV Holdings is the initial transferee of the OMV 2-Year Transfers.

31. The OMV 2-Year Transfers constituted interests in property of the Debtor.

32. The OMV 2-Year Transfers were made with the actual intent to hinder, delay, or defraud the Debtor's creditors. Such intent can be inferred from, among other things, the traditional badges of fraud surrounding such transfers, namely they were made to an insider, they

9

were made for no consideration, Mr. Barnes and Mr. Chestnut caused the Debtor to make the transfers ultimately to line the pockets of Mr. Barnes and Mr. Chestnut, and they were made while the Debtor was insolvent.

33. As a result of the OMV 2-Year Transfers, the Debtor and its creditors have been harmed.

34. The OMV 2-Year Transfers were made to or for the benefit of OMV Holdings.

35. The OMV 2-Year Transfers are avoidable as fraudulent transfer and recoverable pursuant to Sections 548(a)(1)(A) and 550 of the Bankruptcy Code.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests the following relief:

A. That the OMV 2-Year Transfers be avoided and recovered in favor of the Trustee;

B. That judgment be entered in favor of the Trustee, and against OMV Holdings, in an amount of not less than $7,757,163.00, plus interest at the legal rate, together with any costs of this action;

C. That OMV Holdings be directed to pay to the Trustee the sum of $7,757,163.00, plus interest at the legal rate from the date of the OMV Transfers; and

D. That the Trustee be granted such other and further relief as is just and equitable.

### COUNT II – AGAINST OMV HOLDINGS, LLC
**Avoidance and Recovery of OMV 2-Year Transfers as Constructively Fraudulent Under Sections 548 and 550 of the Bankruptcy Code**

36. The allegations contained in paragraphs 1 through 28 are incorporated by reference as though fully set forth herein.

37. The OMV 2-Year Transfers were made within two (2) years of the Petition Date. OMV is the initial transferee of the OMV 2-year Transfers.

10

38. The OMV 2-Year Transfers constituted transfers of interests in property of the Debtor.

39. The Debtor did not receive reasonably equivalent value or fair consideration for the OMV 2-Year Transfers.

40. When the Debtor made the OMV 2-Year Transfers, it was insolvent or became insolvent as a result of the transfers, was engaged in business or transactions or was about to engage in business or transactions for which its remaining property constituted unreasonably small capital; and/or intended to incur, or believed or reasonably should have believed that it would incur, debts that would be beyond its ability to pay such debts.

41. The OMV 2-Year Transfers were made by the Debtor to or for the benefit of OMV Holdings.

42. The OMV 2-Year Transfers are avoidable as fraudulent transfers recoverable Sections 548(a)(1)(B) and 550 of the Bankruptcy Code.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests the following relief:

A. That the OMV 2-Year Transfers be avoided and recovered in favor of the Trustee;

B. That judgment be entered in favor of the Trustee, and against OMV Holdings, in an amount of not less than $7,757,163.00, plus interest at the legal rate, together with any costs of this action;

C. That the OMV Holdings be directed to pay to the Trustee the sum of $7,757,163.00, plus interest at the legal rate from the date of the OMV Transfers; and

D. That the Trustee be granted such other and further relief as is just and equitable.

**COUNT III – AGAINST OMV HOLDINGS, LLC**
**Avoidance and Recovery of OMV 2-Year Transfers as Actually Fraudulent Under**
**11 U.S.C. §§ 544 and 550 of the Bankruptcy Code and Applicable State Law**

43.    The allegations contained in paragraphs 1 through 28 are incorporated by reference as though fully set forth herein.

44.    Pursuant to Section 544(b) of the Bankruptcy Code, the Trustee has the rights of an existing unsecured creditor. Section 544(b) permits the Trustee to assert claims and causes of action that such a creditor could assert under applicable state law.

45.    The OMV 2-Year Transfers were made within two (2) years prior to the Petition Date.

46.    The OMV 2-Year Transfers constituted transfers of an interest in property of the Debtor, which are avoidable under applicable law by a creditor holding an unsecured claim that is allowable against the Debtor under Section 502 of the Bankruptcy Code.

47.    The OMV 2-Year Transfers were made with the actual intent to hinder, delay, or defraud the Debtor's creditors.  Such intent can be inferred from, among other things, the traditional badges of fraud surrounding the transfers, namely they were made to an insider, they were made for no consideration, Mr. Barnes and Mr. Chestnut caused the Debtor to make the transfers ultimately to line the pockets of Mr. Barnes and Mr. Chestnut, and they were made while the Debtor was insolvent.

48.    As a result of the OMV 2-Year Transfers, the Debtor and its creditors have been harmed.

49.    A creditor of the Debtor exists that could avoid the OMV 2-Year Transfers under applicable non-bankruptcy law.

50.    The OMV 2-Year Transfers are avoidable as fraudulent transfers and recoverable pursuant to Sections 544(b) and 550 of the Bankruptcy Code and applicable state law.

12

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests the following relief:

A.      That the OMV 2-Year Transfers be avoided;

B.      That judgment be entered in favor of the Trustee, and against OMV Holdings, in an amount of not less than $7,757,163.00, plus interest at the legal rate, together with any costs of this action;

C.      That OMV Holdings be directed to pay to the Trustee the sum of $7,757,163.00, plus interest at the legal rate from the date of the OMV Transfers; and

D.      That the Trustee be granted such other and further relief as is just and equitable.

### COUNT IV – AGAINST OMV HOLDINGS, LLC
**Avoidance and Recovery of the OMV 2-Year Transfers as Constructively Fraudulent Under 11 U.S.C. §§ 544 and 550 of the Bankruptcy Code and Applicable State Law**

51.     The allegations contained in paragraphs 1 through 28 are incorporated by reference as though fully set forth herein.

52.     Pursuant to Section 544(b) of the Bankruptcy Code, the Trustee has the rights of an existing unsecured creditor. Section 544(b) permits the Trustee to assert claims and causes of action that such a creditor could assert under applicable state law.

53.     The OMV 2-Year Transfers were made within two (2) years prior to the Petition Date.  OMV Holdings is the initial transferee of such transfers.

54.     The OMV 2-Year Transfers constituted transfers of interests in property of the Debtor, which are avoidable under applicable law by a creditor holding an unsecured claim that is allowable against the Debtor under Section 502 of the Bankruptcy Code.

55.     The Debtor, by making the OMV 2-Year Transfers, did not receive reasonably equivalent value, fair consideration or a fair equivalent in exchange for the transfers.

13

56.     When the Debtor made the OMV 2-Year Transfers, the Debtor was insolvent or became insolvent as a result of the transfers; was engaged in business or transactions or was about to engage in business or transactions for which its remaining property constituted unreasonably small capital; and/or intended to incur, or believed or reasonably should have believed that it would incur, debts that would be beyond its ability to pay such debts.

57.     A creditor of the Debtor exists that could avoid the OMV 2-Year Transfers under applicable non-bankruptcy law.

58.     The OMV 2-Year Transfers were made by the Debtor to or for the benefit of OMV Holdings.

59.     The OMV 2-Year Transfers are avoidable as fraudulent transfers and recoverable pursuant to Sections 544(b) and 550 of the Bankruptcy Code and applicable state law.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests the following relief:

A.     That the OMV 2-Year Transfers be avoided and in favor of the Trustee;

B.     That judgment be entered in favor of the Trustee, and against OMV Holdings, in an amount of not less than $7,757,163.00, plus interest at the legal rate, together with any costs of this action;

C.     That OMV Holdings be directed to pay to the Trustee the sum of $7,757,163.00, plus interest at the legal rate from the date of the OMV Transfers; and

D.     That the Trustee be granted such other and further relief as is just and equitable.

### COUNT V – AGAINST OMV HOLDINGS, LLC
**Avoidance and Recovery of OMV 1-Year Transfers as Insider Preferences**
**11 U.S.C. §§ 547 and 550 of the Bankruptcy Code**
**(Alternative Relief)**

60.     The allegations contained in paragraphs 1 through 28 are incorporated by reference as though fully set forth herein.

14

61.     The OMV 1-Year Transfers were transfers of interests in property of the Debtor.

62.     The OMV 1-Year Transfers were made to or for the benefit of OMV Holdings, an asserted creditor of the Debtor.

63.     The OMV 1-Year Transfers were made for or on account of an antecedent debt owed by the Debtor to OMV Holdings before the transfers were made, while the Debtor was insolvent.

64.     The OMV 1-Year Transfers were made within one year before the Petition Date and OMV Holdings was an insider.

65.     The OMV 1-Year Transfers enabled or will enable OMV Holdings to receive more than it would have received if this case were a case under chapter 7, the transfers were not made and OMV Holdings received payment to the extent provided by the provisions of Title 11 U.S.C of the Bankruptcy Code.

66.     The OMV 1-Year Transfers are avoidable and recoverable under Sections 547 and 550 of the Bankruptcy Code.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests the following relief:

A.     That the OMV 1-Year Transfers be avoided;

B.     That judgment be entered in favor of the Trustee, and against OMV Holdings, in an amount of not less than $6,500,163.00, plus interest at the legal rate, together with any costs of this action;

C.     That OMV Holdings be directed to pay to the Trustee the sum of $6,500,163.00, plus interest at the legal rate from the date of the OMV Transfers; and

D.     That the Trustee be granted such other and further relief as is just and equitable.

**COUNT VI – AGAINST IMPEL CAPITAL MANAGEMENT, LLC**
**Avoidance and Recovery of the Impel 2-Year Transfers as Actually Fraudulent Under**
**11 U.S.C. §§ 548 and 550 of the Bankruptcy Code**

67.     The allegations contained in paragraphs 1 through 28 are incorporated by reference as though fully set forth herein.

68.     The Impel 2-Year Transfers were made within two (2) years of the Petition Date. Impel Management is the initial transferee of the Impel 2-Year Transfers.

69.     The Impel 2-Year Transfers constituted interests in property of the Debtor.

70.     The Impel 2-Year Transfers were made with the actual intent to hinder, delay, or defraud the Debtor's creditors.  Such intent can be inferred from, among other things, the traditional badges of fraud surrounding such transfers, namely they were made to a related entity of an insider, they were made for no consideration, Mr. Barnes and Mr. Chestnut caused the Debtor to make the transfers ultimately to line the pockets of Mr. Barnes and Mr. Chestnut, and they were made while the Debtor was insolvent.

71.     As a result of the Impel 2-Year Transfers, the Debtor and its creditors have been harmed.

72.     The Impel 2-Year Transfers were made to or for the benefit of Impel Management.

73.     The Impel 2-Year Transfers are avoidable as fraudulent transfers and recoverable pursuant to Sections 548(a)(1)(A) and 550 of the Bankruptcy Code.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests the following relief:

A.     That the Impel 2-Year Transfers be avoided and recovered in favor of the Trustee;

16

B.      That judgment be entered in favor of the Trustee, and against Impel Management, in an amount of not less than $2,894,634.00, plus interest at the legal rate, together with any costs of this action;

C.      That Impel Management be directed to pay to the Trustee the sum of $2,894,634.00, plus interest at the legal rate from the date of the Impel Transfers; and

D.      That the Trustee be granted such other and further relief as is just and equitable.

### COUNT VII – AGAINST IMPEL  CAPITAL MANAGEMENT, LLC
**Avoidance and Recovery of Impel 2-Year Transfers as Constructively Fraudulent Under Sections 548 and 550 of the Bankruptcy Code**

74.     The allegations contained in paragraphs 1 through 28 are incorporated by reference as though fully set forth herein.

75.     The Impel 2-Year Transfers were made within two (2) years of the Petition Date. Impel Management is the initial transferee of the Impel 2-Year Transfers.

76.     The Impel 2-Year Transfers constituted transfers of interests in property of the Debtor.

77.     The Debtor did not receive reasonably equivalent value or fair consideration for the Impel 2-Year Transfers.

78.     When the Debtor made the Impel 2-Year Transfers it was insolvent or became insolvent as a result of the transfers, was engaged in business or transactions or was about to engage in business or transactions for which its remaining property constituted unreasonably small capital; and/or intended to incur, or believed or reasonably should have believed that it would incur, debts that would be beyond its ability to pay such debts.

79.     The Impel 2-Year Transfers were made by the Debtor to or for the benefit of Impel Management.

17

80.     The Impel 2-Year Transfers are avoidable as fraudulent transfers recoverable Sections 548(a)(1)(B) and 550 of the Bankruptcy Code.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests the following relief:

A.     That the Impel 2-Year Transfers be avoided and recovered in favor of the Trustee;

B.     That judgment be entered in favor of the Trustee, and against Impel Management, in an amount of not less than $2,894,634.00, plus interest at the legal rate, together with any costs of this action;

C.     That Impel Management be directed to pay to the Trustee the sum of $2,894,634.00, plus interest at the legal rate from the date of the Impel Transfers; and

D.     That the Trustee be granted such other and further relief as is just and equitable.

### COUNT VIII – AGAINST IMPEL CAPITAL MANAGEMENT, LLC
**Avoidance and Recovery of Impel 3-Year Transfers as Actually Fraudulent Under 11 U.S.C. §§ 544 and 550 of the Bankruptcy Code and Applicable State Law**

81.     The allegations contained in paragraphs 1 through 28 are incorporated by reference as though fully set forth herein.

82.     Pursuant to Section 544(b) of the Bankruptcy Code, the Trustee has the rights of an existing unsecured creditor. Section 544(b) permits the Trustee to assert claims and causes of action that such a creditor could assert under applicable state law.

83.     The Impel 3-Year Transfers were made within three (3) years prior to the Petition Date.

84.     The Impel 3-Year Transfers constituted transfers of an interest in property of the Debtor, which are avoidable under applicable law by a creditor holding an unsecured claim that is allowable against the Debtor under Section 502 of the Bankruptcy Code.

18

85. The Impel 3-Year Transfers were made with the actual intent to hinder, delay, or defraud the Debtor's creditors. Such intent can be inferred from, among other things, the traditional badges of fraud surrounding the transfers, namely they were made to an entity related to an insider, they were made for no consideration, Mr. Barnes and Mr. Chestnut caused the Debtor to make the transfers ultimately to line the pockets of Mr. Barnes and Mr. Chestnut, and they were made while the Debtor was insolvent.

86. As a result of the Impel 3-Year Transfers, the Debtor and its creditors have been harmed.

87. A creditor of the Debtor exists that could avoid the Impel 3-Year Transfers under applicable non-bankruptcy law.

88. The Impel 3-Year Transfers are avoidable as fraudulent transfers and recoverable pursuant to Sections 544(b) and 550 of the Bankruptcy Code and applicable state law.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests the following relief:

A. That the Impel 3-Year Transfers be avoided;

B. That judgment be entered in favor of the Trustee, and against the Impel Management, in an amount of not less than $3,029,244.00, plus interest at the legal rate, together with any costs of this action;

C. That Impel Management be directed to pay to the Trustee the sum of $3,029,244.00, plus interest at the legal rate from the date of the Impel Transfers; and

D. That the Trustee be granted such other and further relief as is just and equitable.

**COUNT IX – AGAINST IMPEL CAPITAL MANAGEMENT, LLC**
**Avoidance and Recovery of the Impel 3-Year Transfers as Constructively Fraudulent**
**Under 11 U.S.C. §§ 544 and 550 of the Bankruptcy Code and Applicable State Law**

89.     The allegations contained in paragraphs 1 through 28 are incorporated by reference as though fully set forth herein.

90.     Pursuant to Section 544(b) of the Bankruptcy Code, the Trustee has the rights of an existing unsecured creditor. Section 544(b) permits the Trustee to assert claims and causes of action that such a creditor could assert under applicable state law.

91.     The Impel 3-year Transfers were made within three (3) years prior to the Petition Date.  Impel Management is the initial transferee of such transfers.

92.     The Impel 3-Year Transfers constituted transfers of interests in property of the Debtor, which are avoidable under applicable law by a creditor holding an unsecured claim that is allowable against the Debtor under Section 502 of the Bankruptcy Code.

93.     The Debtor, by making the Impel 3-Year Transfers, did not receive reasonably equivalent value, fair consideration or a fair equivalent in exchange for the transfers.

94.     When the Debtor made the Impel 3-Year Transfers, the Debtor was insolvent or became insolvent as a result of the transfers; was engaged in business or transactions or was about to engage in business or transactions for which its remaining property constituted unreasonably small capital; and/or intended to incur, or believed or reasonably should have believed that it would incur, debts that would be beyond its ability to pay such debts.

95.     A creditor of the Debtor exists that could avoid the Impel 3-Year Transfers under applicable non-bankruptcy law.

96.     The Impel 3-Year Transfers were made by the Debtor to or for the benefit of Impel Management.

20

97.    The Impel 3-Year Transfers are avoidable as fraudulent transfers and recoverable pursuant to Sections 544(b) and 550 of the Bankruptcy Code and applicable state law.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests the following relief:

A.    That the Impel 3-Year Transfers be avoided and in favor of the Trustee;

B.    That judgment be entered in favor of the Trustee, and against Impel Management, in an amount of not less than $3,029,244.00, plus interest at the legal rate, together with any costs of this action;

C.    That Impel Management be directed to pay to the Trustee the sum of $3,029,244.00, plus interest at the legal rate from the date of the Impel Transfers; and

D.    That the Trustee be granted such other and further relief as is just and equitable.

### COUNT X – AGAINST IMPEL CAPITAL MANAGEMENT, LLC
**Avoidance and Recovery of Impel 1-Year Transfers as Insider Preferences**
**11 U.S.C. §§ 547 and 550 of the Bankruptcy Code**
**(Alternative Relief)**

98.    The allegations contained in paragraphs 1 through 28 are incorporated by reference as though fully set forth herein.

99.    The Impel 1-Year Transfers were transfers of interests in property of the Debtor.

100.    The Impel 1-Year Transfers were made to or for the benefit of Impel Management, an asserted creditor of the Debtor.

101.    The Impel 1-Year Transfers were made for or on account of an antecedent debt owed by the Debtor to Impel Management before the transfers were made, while the Debtor was insolvent.

102.    The Impel 1-Year Transfers were made within one year before the Petition Date and Impel Management was an insider.

21

103.     The Impel 1-Year Transfers enabled or will enable Impel Management to receive more than it would have received if this case were a case under chapter 7, the transfers were not made and Impel Management received payment to the extent provided by the provisions of Title 11 U.S.C of the Bankruptcy Code.

104.     The Impel 1-Year Transfers are avoidable and recoverable under Sections 547 and 550 of the Bankruptcy Code.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests the following relief:

A.     That the Impel 1-Year Transfers be avoided;

B.     That judgment be entered in favor of the Trustee, and against Impel Management, in an amount of not less than $1,751,166.00, plus interest at the legal rate, together with any costs of this action;

C.     That Impel Management be directed to pay to the Trustee the sum of $1,751,166.00, plus interest at the legal rate from the date of the Impel Transfers; and

D.     That the Trustee be granted such other and further relief as is just and equitable

### COUNT XI – AGAINST CHESTNUT BUSINESS CONSULTING, LLC
**Avoidance and Recovery of the Chestnut Consulting 2-Year Transfers as Actually Fraudulent Under 11 U.S.C. §§ 548 and 550 of the Bankruptcy Code**

105.     The allegations contained in paragraphs 1 through 28 are incorporated by reference as though fully set forth herein.

106.     The Chestnut Consulting 2-year Transfers were made within two (2) years of the Petition Date.   Chestnut Consulting is the initial transferee of the Chestnut Consulting 2-Year Transfers.

107.     The Chestnut Consulting 2-Year Transfers constituted interests in property of the Debtor.

108.     The Chestnut Consulting 2-Year Transfers were made with the actual intent to hinder, delay, or defraud the Debtor's creditors.  Such intent can be inferred from, among other things, the traditional badges of fraud surrounding such transfers, namely they were made to a related entity of an insider, they were made for no consideration, and they were made while the Debtor was insolvent.

109.     As a result of the Chestnut Consulting 2-Year Transfers, the Debtor and its creditors have been harmed.

110.     The Chestnut Consulting 2-Year Transfers were made to or for the benefit of Chestnut Consulting.

111.     The Chestnut Consulting 2-Year Transfers are avoidable as fraudulent transfers and recoverable pursuant to Sections 548(a)(1)(A) and 550 of the Bankruptcy Code.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests the following relief:

A.     That the Chestnut Consulting 2-Year Transfers be avoided and recovered in favor of the Trustee;

B.     That judgment be entered in favor of the Trustee, and against Chestnut Consulting, in an amount of not less than $35,519.00, plus interest at the legal rate, together with any costs of this action;

C.     That Chestnut Consulting be directed to pay to the Trustee the sum of $35,519.00, plus interest at the legal rate from the date of the Chestnut Consulting Transfers; and

D.     That the Trustee be granted such other and further relief as is just and equitable.

**COUNT XII – AGAINST CHESTNUT BUSINESS CONSULTING, LLC**
**Avoidance and Recovery of Chestnut Consulting 2-Year Transfers as Constructively Fraudulent Under Sections 548 and 550 of the Bankruptcy Code**

112. The allegations contained in paragraphs 1 through 28 are incorporated by reference as though fully set forth herein.

113. The Chestnut Consulting 2-Year Transfers were made within two (2) years of the Petition Date. Chestnut Consulting is the initial transferee of the Chestnut Consulting 2-Year Transfers.

114. The Chestnut Consulting 2-Year Transfers constituted transfers of interests in property of the Debtor.

115. The Debtor did not receive reasonably equivalent value or fair consideration for the Chestnut Consulting 2-Year Transfers.

116. When the Debtor made the Chestnut Consulting 2-Year Transfers it was insolvent or became insolvent as a result of the transfers, was engaged in business or transactions or was about to engage in business or transactions for which its remaining property constituted unreasonably small capital; and/or intended to incur, or believed or reasonably should have believed that it would incur, debts that would be beyond its ability to pay such debts.

117. The Chestnut Consulting 2-Year Transfers were made by the Debtor to or for the benefit of Chestnut Consulting.

118. The Chestnut Consulting 2-Year Transfers are avoidable as fraudulent transfers recoverable Sections 548(a)(1)(B) and 550 of the Bankruptcy Code.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests the following relief:

A. That the Chestnut Consulting 2-Year Transfers be avoided and recovered in favor of the Trustee;

24

B.      That judgment be entered in favor of the Trustee, and against Chestnut Consulting, in an amount of not less than $35,519.00, plus interest at the legal rate, together with any costs of this action;

C.      That Impel Capital be directed to pay to the Trustee the sum of $35,519.00, plus interest at the legal rate from the date of the Chestnut Consulting Transfers; and

D.      That the Trustee be granted such other and further relief as is just and equitable.

**COUNT XIII – AGAINST CHESTNUT BUSINESS CONSULTING, LLC**
**Avoidance and Recovery of Chestnut Consulting 3-Year Transfers as Actually Fraudulent Under 11 U.S.C. §§ 544 and 550 of the Bankruptcy Code and Applicable State Law**

119.    The allegations contained in paragraphs 1 through 28 are incorporated by reference as though fully set forth herein.

120.    Pursuant to Section 544(b) of the Bankruptcy Code, the Trustee has the rights of an existing unsecured creditor. Section 544(b) permits the Trustee to assert claims and causes of action that such a creditor could assert under applicable state law.

121.    The Chestnut Consulting 3-Year Transfers were made within three (3) years prior to the Petition Date.

122.    The Chestnut Consulting 3-Year Transfers constituted transfers of an interest in property of the Debtor, which are avoidable under applicable law by a creditor holding an unsecured claim that is allowable against the Debtor under Section 502 of the Bankruptcy Code.

123.    The Chestnut Consulting 3-Year Transfers were made with the actual intent to hinder, delay, or defraud the Debtor's creditors.  Such intent can be inferred from, among other things, the traditional badges of fraud surrounding the transfers, namely they were made to an entity related to an insider, they were made for no consideration, and they were made while the Debtor was insolvent.

25

124.    As a result of the Chestnut Consulting 3-Year Transfers, the Debtor and its creditors have been harmed.

125.    A creditor of the Debtor exists that could avoid the Chestnut Consulting 3-year Transfers under applicable non-bankruptcy law.

126.    The Chestnut Consulting 3-Year Transfers are avoidable as fraudulent transfers and recoverable pursuant to Sections 544(b) and 550 of the Bankruptcy Code and applicable state law.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests the following relief:

A.    That the Chestnut Consulting 3-Year Transfers be avoided;

B.    That judgment be entered in favor of the Trustee, and against the Chestnut Consulting, in an amount of not less than $93,486.00, plus interest at the legal rate, together with any costs of this action;

C.    That Chestnut Consulting be directed to pay to the Trustee the sum of $93,486.00, plus interest at the legal rate from the date of the Chestnut Consulting Transfers; and

D.    That the Trustee be granted such other and further relief as is just and equitable.

### COUNT XIV – AGAINST CHESTNUT BUSINESS CONSULTING, LLC
**Avoidance and Recovery of the Chestnut Consulting 3-Year Transfers as Constructively Fraudulent Under 11 U.S.C. §§ 544 and 550 of the Bankruptcy Code and Applicable State Law**

127.    The allegations contained in paragraphs 1 through 28 are incorporated by reference as though fully set forth herein.

128.    Pursuant to Section 544(b) of the Bankruptcy Code, the Trustee has the rights of an existing unsecured creditor. Section 544(b) permits the Trustee to assert claims and causes of action that such a creditor could assert under applicable state law.

129.    The Chestnut Consulting 3-Year Transfers were made within three (3) years prior to the Petition Date.  Chestnut Consulting is the initial transferee of such transfers.

26

130.    The Chestnut Consulting 3-Year Transfers constituted transfers of interests in property of the Debtor, which are avoidable under applicable law by a creditor holding an unsecured claim that is allowable against the Debtor under Section 502 of the Bankruptcy Code.

131.    The Debtor, by making the Chestnut Consulting 3-Year Transfers, did not receive reasonably equivalent value, fair consideration or a fair equivalent in exchange for the transfers.

132.    When the Debtor made the Chestnut Consultiung 3-Year Transfers, the Debtor was insolvent or became insolvent as a result of the transfers; was engaged in business or transactions or was about to engage in business or transactions for which its remaining property constituted unreasonably small capital; and/or intended to incur, or believed or reasonably should have believed that it would incur, debts that would be beyond its ability to pay such debts.

133.    A creditor of the Debtor exists that could avoid the Chestnut Consulting 3-Year Transfers under applicable non-bankruptcy law.

134.    The Chestnut Consulting 3-Year Transfers were made by the Debtor to or for the benefit of Chestnut Consulting.

135.    The Chestnut Consulting 3-Year Transfers are avoidable as fraudulent transfers and recoverable pursuant to Sections 544(b) and 550 of the Bankruptcy Code and applicable state law.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests the following relief:

A.    That the Chestnut Consulting 3-Year Transfers be avoided and in favor of the Trustee;

B.    That judgment be entered in favor of the Trustee, and against Chestnut Consulting, in an amount of not less than $93,486.00, plus interest at the legal rate, together with any costs of this action;

27

C.      That Chestnut Consulting be directed to pay to the Trustee the sum of $93,486.00, plus interest at the legal rate from the date of the Chestnut Consulting Transfers; and

D.      That the Trustee be granted such other and further relief as is just and equitable.

**COUNT XV – AGAINST BW CAPITAL, LLC T/A BW CAPITAL**
**Avoidance and Recovery of the BW 2-Year Transfers as Actually Fraudulent Under**
**11 U.S.C. §§ 548 and 550 of the Bankruptcy Code**

136.    The allegations contained in paragraphs 1 through 28 are incorporated by reference as though fully set forth herein.

137.    The BW Capital 2-Year Transfers were made within two years of the Petition Date. Chestnut Consulting is the initial transferee of the BW Capital 2-Year Transfers.

138.    The BW Capital 2-Year Transfers constituted interests in property of the Debtor.

139.    The BW Capital 2-Year Transfers were made with the actual intent to hinder, delay, or defraud the Debtor's creditors.  Such intent can be inferred from, among other things, the traditional badges of fraud surrounding such transfers, namely they were made to a related entity of an insider, they were made for no consideration, and they were made while the Debtor was insolvent.

140.    As a result of the BW Capital 2-Year Transfers, the Debtor and its creditors have been harmed.

141.    The BW Capital 2-Year Transfers were made to or for the benefit of BW Capital.

142.    The BW Capital 2-Year Transfers are avoidable as fraudulent transfers and recoverable pursuant to Sections 548(a)(1)(A) and 550 of the Bankruptcy Code.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests the following relief:

A.      That the BW Capital 2-year Transfers be avoided and recovered in favor of the Trustee;

28

B.      That judgment be entered in favor of the Trustee, and against BW Capital, in an amount of not less than $34,515.00, plus interest at the legal rate, together with any costs of this action;

C.      That BW be directed to pay to the Trustee the sum of $34,515.00, plus interest at the legal rate from the date of the BW Capital Transfers; and

D.      That the Trustee be granted such other and further relief as is just and equitable.

**COUNT XVI – AGAINST BW CAPITAL, LLC T/A BW CAPITAL**
**Avoidance and Recovery of BW 2-Year Transfers as Constructively Fraudulent Under Sections 548 and 550 of the Bankruptcy Code**

143.    The allegations contained in paragraphs 1 through 28 are incorporated by reference as though fully set forth herein.

144.    The BW Capital 2-Year Transfers were made within two (2) years of the Petition Date.  BW is the initial transferee of the BW Capital 2-Year Transfers.

145.    The BW Capital 2-Year Transfers constituted transfers of interests in property of the Debtor.

146.    The Debtor did not receive reasonably equivalent value or fair consideration for the BW Capital 2-Year Transfers.

147.    When the Debtor made the BW Capital 2-Year Transfers it was insolvent or became insolvent as a result of the transfers, was engaged in business or transactions or was about to engage in business or transactions for which its remaining property constituted unreasonably small capital; and/or intended to incur, or believed or reasonably should have believed that it would incur, debts that would be beyond its ability to pay such debts.

148.    The BW Capital 2-Year Transfers were made by the Debtor to or for the benefit of BW Capital.

29

149. The BW Capital 2-Year Transfers are avoidable as fraudulent transfers recoverable Sections 548(a)(1)(B) and 550 of the Bankruptcy Code.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests the following relief:

E. That the BW Capital 2-Year Transfers be avoided and recovered in favor of the Trustee;

F. That judgment be entered in favor of the Trustee, and against BW Capital, in an amount of not less than $34,515.00, plus interest at the legal rate, together with any costs of this action;

G. That BW Capital be directed to pay to the Trustee the sum of $34,515.00, plus interest at the legal rate from the date of the BW Capital Transfers; and

H. That the Trustee be granted such other and further relief as is just and equitable.

### COUNT XVII – AGAINST BW CAPITAL, LLC T/A BW CAPITAL
**Avoidance and Recovery of BW 3-Year Transfers as Actually Fraudulent Under 11 U.S.C. §§ 544 and 550 of the Bankruptcy Code and Applicable State Law**

150. The allegations contained in paragraphs 1 through 28 are incorporated by reference as though fully set forth herein.

151. Pursuant to Section 544(b) of the Bankruptcy Code, the Trustee has the rights of an existing unsecured creditor. Section 544(b) permits the Trustee to assert claims and causes of action that such a creditor could assert under applicable state law.

152. The BW Capital 3-Year Transfers were made within three (3) years prior to the Petition Date.

153. The BW Capital 3-Year Transfers constituted transfers of an interest in property of the Debtor, which are avoidable under applicable law by a creditor holding an unsecured claim that is allowable against the Debtor under Section 502 of the Bankruptcy Code.

30

154.    The BW Capital 3-Year Transfers were made with the actual intent to hinder, delay, or defraud the Debtor's creditors.  Such intent can be inferred from, among other things, the traditional badges of fraud surrounding the transfers, namely they were made to an entity related to an insider, they were made for no consideration, and they were made while the Debtor was insolvent.

155.    As a result of the BW Capital 3-Year Transfers, the Debtor and its creditors have been harmed.

156.    A creditor of the Debtor exists that could avoid the BW Capital 3-Year Transfers under applicable non-bankruptcy law.

157.    The BW Capital 3-Year Transfers are avoidable as fraudulent transfers and recoverable pursuant to Sections 544(b) and 550 of the Bankruptcy Code and applicable state law.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests the following relief:

A.    That the BW Capital 3-Year Transfers be avoided;

B.    That judgment be entered in favor of the Trustee, and against BW Capital, in an amount of not less than $93,938.00, plus interest at the legal rate, together with any costs of this action;

C.    That BW Capital be directed to pay to the Trustee the sum of $93,938.00, plus interest at the legal rate from the date of the BW Capital Transfers; and

D.    That the Trustee be granted such other and further relief as is just and equitable.

**COUNT XVIII – AGAINST BW CAPITAL, LLC T/A BW CAPITAL**
**Avoidance and Recovery of the BW 3-Year Transfers as Constructively Fraudulent Under 11 U.S.C. §§ 544 and 550 of the Bankruptcy Code and Applicable State Law**

158.    The allegations contained in paragraphs 1 through 28 are incorporated by reference as though fully set forth herein.

159.     Pursuant to Section 544(b) of the Bankruptcy Code, the Trustee has the rights of an existing unsecured creditor. Section 544(b) permits the Trustee to assert claims and causes of action that such a creditor could assert under applicable state law.

160.     The BW Capital 3-Year Transfers were made within three (3) years prior to the Petition Date.  BW is the initial transferee of such transfers.

161.     The BW Capital 3-Year Transfers constituted transfers of interests in property of the Debtor, which are avoidable under applicable law by a creditor holding an unsecured claim that is allowable against the Debtor under Section 502 of the Bankruptcy Code.

162.     The Debtor, by making the BW Capital 3-Year Transfers, did not receive reasonably equivalent value, fair consideration or a fair equivalent in exchange for the transfers.

163.     When the Debtor made the BW Capital 3-Year Transfers, the Debtor was insolvent or became insolvent as a result of the transfers; was engaged in business or transactions or was about to engage in business or transactions for which its remaining property constituted unreasonably small capital; and/or intended to incur, or believed or reasonably should have believed that it would incur, debts that would be beyond its ability to pay such debts.

164.     A creditor of the Debtor exists that could avoid the BW Capital 3-Year Transfers under applicable non-bankruptcy law.

165.     The BW Capital 3-Year Transfers were made by the Debtor to or for the benefit of BW Capital.

166.     The BW Capital 3-Year Transfers are avoidable as fraudulent transfers and recoverable pursuant to Sections 544(b) and 550 of the Bankruptcy Code and applicable state law.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests the following relief:

A.     That the BW Capital 3-Year Transfers be avoided and in favor of the Trustee;

32

B.      That judgment be entered in favor of the Trustee, and against BW Capital, in an amount of not less than $93,515.00, plus interest at the legal rate, together with any costs of this action;

C.      That BW Capital be directed to pay to the Trustee the sum of $93,515.00, plus interest at the legal rate from the date of the BW Capital Transfers; and

D.      That the Trustee be granted such other and further relief as is just and equitable

## COUNT XIX – AGAINST LAMAR BARNES AND LONNIE B. CHESTNUT, III, JOINTLY AND SEVERALLY
### Recovery of Fraudulent Transfer Under 11 U.S.C. § 550 of the Bankruptcy Code

167.    The allegations contained in paragraphs 1 through 28 are incorporated by reference as though fully set forth herein.

168.    The OMV Transfers, Impel Transfers, Chestnut Consulting Transfers, and BW Capital Transfers (collectively together, the "Transfers") constitute avoidable transfers.

169.    Messrs. Barnes and Chestnut, jointly and severally, were the immediate or mediate transferees of the right, title and interest in the Barnes & Chestnut Transfers.

170.    The aggregate value of the Transfers is recoverable from Messrs. Barnes and Chestnut, jointly and severally, pursuant to Section 550(a)(2) of the Bankruptcy Code.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests the following relief:

A.      That judgment be entered in favor of the Trustee, and against Mr. Barnes and Mr. Chestnut, jointly and severally, in an amount of not less than $10,973,831.00, plus interest at the legal rate, together with any costs of this action;

B.      That Mr. Barnes and Mr. Chestnut be directed to pay to the Trustee the sum of $10,973,831.00, plus interest at the legal rate from the date of the Barnes & Chestnut Transfers; and

33

C.      That the Trustee be granted such other and further relief as is just and equitable.

## COUNT XX – ALL DEFENDANTS
### To Disallow Claims Pursuant to Section 502(d) of the Bankruptcy Code

171.    The allegations contained in paragraphs 1 through 28 are incorporated by reference as though fully set forth herein.

172.    OMV Holdings was the initial transferee of the OMV 3-Year Transfers.

173.    Impel Management was the initial transferee of the Impel Transfers.

174.    Chestnut Consulting was the initial transferee of the Chestnut Consulting Transfers.

175.    BW Capital was the initial transferee of the BW Capital Transfers.

176.    Mr. Barnes and Mr. Chestnut, jointly and severally, were the immediate or mediate transferees of the Barnes & Chestnut Transfers.

177.    Pursuant to Section 502(d) of the Bankruptcy Code, all claims of any Defendants against the Debtor must be disallowed until such time as the Defendants pay to the Trustee the aggregate amount of all avoidable and recoverable transfers, plus interest and costs.

178.    Accordingly, all claims of the Defendants against the Debtor must be disallowed until such time as the Defendants pay such respective aggregate amounts to the Trustee, plus interest and costs.

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests the following relief:

A.      That all claims against the Debtor all Defendants be disallowed pursuant to Section 502(d) of the Bankruptcy Code;

B.      That the Trustee be granted such other and further relief as is just and equitable.

34

## COUNT XXI – AGAINST LAMAR BARNES AND LONNIE B. CHESTNUT, III
### (Fraud and Breach of Standard of Care)

179.     The allegations contained in paragraphs 1 through 28 are incorporated by reference as though fully set forth herein.

180.     As directors of the Debtor, Mr. Barnes and Mr. Chestnut were obligated to perform their duties as directors in accordance with, *inter alia*, Section 2-405.1 of the Maryland Corporations and Associations Article which in relevant part provides that: "(c) A director of a corporation shall act: (1) In good faith; (2) In a manner the director reasonably believes to be in the best interests of the corporation; and (3) With the care that an ordinarily prudent person in a like position would use under similar circumstances."

181.     Instead of complying with Maryland law, Mr. Barnes and Mr. Chestnut used their position as directors to benefit themselves and loot the Debtor.

182.     Among other things, Mr. Barnes and Mr. Chestnut caused the Debtor to fraudulently transfer to entities they controlled, and ultimately to themselves, in excess of $10.9 million.  In so doing, Mr. Barnes and Mr. Chestnut caused and hastened the Debtor's demise, and their actions were known and intentional and not taken in accordance with their obligations under Section 2-405.1 of the Maryland Corporations and Associations Article.

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests the following relief:

A.     That judgment be entered in favor of the Trustee and against Mr. Barnes and Mr. Chestnut for damages in an amount not less than $10,973,831.00; and

B.     That the Trustee be granted such other and further relief as is just and equitable.

**COUNT XXII – AGAINST LAMAR BARNES AND LONNIE B. CHESTNUT, III**
**(Fraud and Breach of Duty of Loyalty)**

183.    The allegations contained in paragraphs 1 through 28 are incorporated by reference as though fully set forth herein.

184.    As officers of the Debtor, Mr. Barnes and Mr. Chestnut owed a duty of loyalty to the Debtor, including, but not limited to, (i) avoiding self-dealing and self-interested actions at the Debtor's expense, (ii) being candid and disclosing matters relating to their employment and business actions.

185.    Mr. Barnes and Mr. Chestnut breached their duty of loyalty by, among other things, looting the Debtor of essentially all of its operating capital, failing to promote the Debtor's operations, and destroying the Debtor's business operations.

WHEREFORE, for the foregoing reasons, the Trustee respectfully requests the following relief:

A.    That judgment be entered in favor of the Trustee and against Mr. Barnes and Mr. Chestnut for damages in an amount not less than $10,973,831.00; and

B.    That the Trustee be granted such other and further relief as is just and equitable.

Dated: February 24, 2026

/s/ *Richard M. Goldberg*
Richard M. Goldberg, Bar No. 07994
Daniel J. Zeller, Fed. Bar No. 28107
SHAPIRO SHER GUINOT & SANDLER
250 W. Pratt Street, Suite 2000
Baltimore, Maryland 21201
Tel: 410-385-4274
Fax: 410-539-7611
Email: rmg@shapirosher.com
         djz@shapirosher.com

*Bankruptcy Counsel to Morgan W. Fisher,*
*Chapter 7 Trustee*

36