**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

In re: Case: 24-11528-DER     Chapter 7    Adversary No. 26-00040

**Provizor Federal, Inc.**
Debtor

**Morgan W. Fisher, Chapter 7 Trustee**
Plaintiff

vs.

**Impel Capital Management, LLC, et al.,**
Defendants

**DEFENDANTS LAMAR BARNES AND
BW CAPITAL ADVISORS LLC T/A BW CAPITAL ADVISORS'
MOTION TO DISMISS PLAINTIFF'S ADVERSARY COMPLAINT**

Pursuant to Fed. R. Civ. P. 12(b)(6), as made applicable under Fed. R. Bankr. P. 7012, Defendants Lamar Barnes and BW Capital Advisors LLC ("BW Capital", together with Lamar Barnes, "Defendants"), by their limited appearance counsel, file this Motion to Dismiss Plaintiff Morgan W. Fisher, Chapter 7 Trustee's ("Plaintiff") Adversary Complaint (the "Adversary Complaint") along with the following point and authorities.

1

**INTRODUCTION**

1.     At its core, Plaintiff's Adversary Complaint alleges that Lamar Barnes and Lonnie B. Chestnut, through various affiliated entities, caused the Debtor to transfer substantial sums of money for their personal benefit.

2.     Yet, despite the seriousness of these allegations, the Adversary Complaint offers nothing more than conclusory statements and generalized accusations to support any purported wrongdoing by Mr. Barnes or BW Capital.

3.     Although the general pleading standard at this stage is not onerous, claims sounding in actual fraud are subject to a heightened standard and must be pled with particularity. Even under Rule 8, however, a complaint must allege sufficient factual matter to state a plausible claim for relief. Here, Plaintiff's Adversary Complaint does neither. It fails to allege facts with the specificity required for fraud and, more broadly, does not provide sufficient detail to permit Mr. Barnes or BW Capital to meaningfully respond or prepare a defense.

4.     Instead, the Complaint reflects an improper attempt to use this adversary proceeding as a fishing expedition to obtain discovery not developed in the underlying bankruptcy case. Accordingly, the Court should grant Defendants' Motion and dismiss the claims against them.

## PROCEDURAL BACKGROUND

5.      On February 26, 2024, Provizor Federal, Inc. (the "Debtor") filed a petition pursuant to Chapter 11 of the United States Code ("Bankruptcy Code") in the District Court for the District of Maryland (the "Bankruptcy Case").

6.      On May 16, 2024, this Court granted the Debtor's motion to convert the Bankruptcy Case to one governed by Chapter 7 of the Bankruptcy Code. On February 25, 2026, Plaintiff Morgan W. Fisher, Chapter 7 Trustee ("Plaintiff") filed an adversary complaint (the "Adversary Complaint") against Defendants Impel Capital Management, LLC, OMV Holdings, LLC, Chestnut Business Consulting, LLC, BW Capital Advisors LLC t/w BW Capital Advisors, Lamar Barnes, and Lonnie B. Chestnut, III.

7.      Now, Defendants Lamar Barnes and BW Capital file this Motion to Dismiss the Adversary Complaint for its failure to state a claim against Lamar Barnes and BW Capital.

## ADVERSARY COMPLAINT ALLEGATIONS

8.      Plaintiff alleges that Mr. Barnes was a "director and officer of the Debtor" and held the status of an "insider of the Debtor." Pl's. Adv. Compl. ⫿ 7.

9.      Plaintiff's Adversary Complaint further alleges that "Defendant Impel Capital Management, LLC, f/k/a Impel Capital, LLC" is an entity "affiliated with or

owned by Impel Capital (defined below) and/or Mr. Barnes and Mr. Chestnut individually." *Id.* ¶ 3.

10.     The Adversary Complaint states that OMV Holdings, LLC ("OMV Holdings") is 100% shareholder of the Debtor and that Impel Capital, LLC and LCMH, LLC own 72.5% and 27.5% of OMV Holdings, respectively. *Id.*

11.     Plaintiff alleges that Mr. Barnes, among others, served as a manager of OMV Holdings and that the company acquired Debtor on October 7, 2021. *Id.* ¶ 4.

12.     Plaintiff claims that Mr. Barnes is 100% owner of BW Capital. *Id.* ¶ 6.

13.     The Adversary Complaint states that on January 1, 2022 the Debtor entered into a Management Agreement with "Impel Management" for Mr. Barnes and Mr. Chestnut to provide consulting services to the Debtor, "through themselves or through Chestnut Consulting and BW Capital." *Id.* ¶ 17.

14.     Plaintiff alleges that "Mr. Barnes and Mr. Chestnut caused the Debtor to distribute to entities they owned and/or controlled (the Defendants named herein) substantial, exorbitant sums of the Debtor's operating cash and other Debtor funds under the guise of distributions, management fees, success fees, consulting fees or other obligations purportedly owed to them or their entities." *Id.* ¶ 18.

15.     Plaintiff asserts that Mr. Barnes and Mr. Chestnut created an "elaborate scheme[]" to cause Debtor to transfer 10.9 million of its cash to other entities and then ultimately into their own pockets. However, nowhere in the Adversary

Complaint does Plaintiff identify the source, date, or amount for which these alleged transfers were made to Mr. Barnes or Mr. Chestnut. *Id.*

16.   Plaintiff details a single "scheme" purportedly used by Defendants to "drain the Debtor of essentially all of its operating capital". *Id.* ¶ 21. The Adversary Complaint claims that on March 27, 2023 and July 6, 2023 Debtor received an aggregate amount of $8,151,247.91 in Employee Retention Credits ("ERCs") received under the CARES Act. *Id.* ¶ 20.

17.   Plaintiff claims that almost immediately after the March 27 and July 6 deposits, Mr. Barnes and Mr. Chestnut caused Debtor to transfer "nearly the full amount thereof to OMV Holdings and Impel Management." *Id.*

18.   Plaintiff believes that Mr. Barnes and Mr. Chestnut ultimately transferred 100% of the ERCs to themselves and used BW Capital, *inter alia*, to charge success fees "simply by the Debtor filing amended payroll tax returns which was done by the Debtor's accountants." *Id.* However, the Adversary Complaint fails to identify the source, date, or amount for which these alleged transfers were made to Mr. Barnes or Mr. Chestnut.

19.   Moreover, Plaintiff alleges that "within three (3) years of the Petition Date, the Debtor transferred the aggregate sum of $93,938.00 . . . [with] $34,515.00 [transferred within two (2) years] to BW Capital for no consideration." *Id.* ¶ 26. The chart below reflects the alleged transfers:

**BW Capital Transfers**

| Transfers | Date | Amount |
|---|---|---|
| 1 | 11/3/2021 | $13,161 |
| 2 | 11/29/2021 | $24,262 |
| 3 | 12/22/2021 | $22,000 |
| 4 | 6/29/2022 | $3,514 |
| 5 | 8/1/2023 | $31,000 |

20.     Notably, the Adversary Complaint fails to allege facts that suggest an improper purpose for each transfer, specifically transfers made **prior to the Debtor allegedly receiving ERCs and prior to Debtor entering the alleged management contract with Impel Management**.

21.     Instead, Plaintiff's Adversary Complaint includes a blanket allegation that Mr. Barnes and Mr. Chestnut caused transfers of "fabricated" "management fees, consulting fees, distributions, dividends and other . . .fees" to OMV Holdings, Chestnut Consulting and BW Capital. *Id.* ¶ 16. However, Plaintiff neither alleges facts to support such fabrications nor points to which transfers were tainted by the fraud.

22.     In fact, the Adversary Complaint alleges millions of dollars in transfers to multiple entities prior to Debtor depositing the ERCs on March 27, 2023. *Id.* at

Ex. A. Despite this fact, Plaintiff's Adversary Complaint offers no specific allegations about how these pre-ERC transfers fit with the alleged "scheme", such as the alleged purpose for the transfers, the specific person(s) responsible for authorizing the transfers, or why the amounts transferred do not constitute fair consideration for the services allegedly rendered.

23.    Instead, Plaintiff's Adversary Complaint makes conclusory assertions that "Mr. Barnes and Mr. Chestnut . . . acted in their own personal interests and not that of the Debtor (or its creditors) and drained the Debtor of essentially all of its operating capital to line their own pockets." *Id.* ¶ 21.

24.    Moreover, the Adversary Complaint identifies no transfer of cash from any entity to Mr. Barnes, personally, and fails to explain why each transfer it lists for BW Capital constitutes fraud. Instead, it lists five (5) separate transfers and bootstraps them together into one alleged fraudulent scheme. *Id.* at Ex. A. In fact, the Adversary Complaint bundles over sixty-one (61) individual transfers together amongst three (3) separate entities with no specific explanations why each transaction is improper. *Id.*

25.    Similarly, Plaintiff alleges that Mr. Barnes and Mr. Chestnut "loot[ed]" the Debtor without taking any formal board meetings or approvals "for their personal benefits" but fails to identify a single transfer received by either Mr. Barnes or Mr. Chestnut. *Id.* ¶ 22.

## MOTION STANDARD

26.    "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Tavenner v. ULX Partners, LLC (In re LeClairRyan PLLC),* 2021 Bankr. LEXIS 3038 at *3. (Bankr. E.D. Va. Nov. 3, 2021). However, "courts are not bound to accept as true legal conclusions couched as a factual allegation" and "may disregard any legal conclusions in the complaint." *Official Comm. of Unsecured Creditors v. CIT Group/Business Credit, Inc. (In re Jevic Holding Corp.)*, 2011 Bankr. LEXIS 3553 at *9 (Bankr. D. Del. Sep. 15, 2011). Moreover, speculative allegations do not satisfy the Plaintiff's burden of showing a plausible claim. *See id.; see also Katz v. Anderson (In re Anderson),* 2018 Bankr. LEXIS 1928 at *5 (Bankr. D. Conn. June 26, 2018) (noting that pleading *"*facts that are merely consistent with a defendant's liability, [] stops short of the line between possibility and plausibility of 'entitlement to relief.").

27.    In addition, while claims for constructive fraud are governed by Fed. R. Civ. P. 8, claims asserting actual fraudulent transfers are governed by Fed. R. Civ. P. 9's heightened pleading standard, which requires the complaint to establish the "who, what, when, where and how" of the alleged fraud. *See Brookview Apts., L.L.C. v. Hoer (In re Weigh)*, 576 B.R. 189, 212 (C.D. Cal. 2017).

## ARGUMENT

**I.     COUNTS XV and XVII of Plaintiff's Adversary Complaint Fail to Assert Particular Facts Supporting Actual Fraud Against BW Capital.**

8

28.     Count XV of Plaintiff's Adversary Complaint alleges actual fraud against BW Capital under § 548 of the Bankruptcy Code.[1] Under § 548,

> a trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract), incurred by the debtor, that was made or incurred within 2 years before the date of the filing of the petition if the debtor voluntarily or involuntarily—(A) made such transfer or incurred such obligation with actual intent to hinder, delay or defraud any entity which the debtor was or became, on or after the date such transfer was made or such obligation was incurred, indebted

11 U.S.C. § 548(a)(1)(A).

29.     To survive a motion to dismiss, a claim for avoidance of a transfer based upon actual fraud under the Bankruptcy Code 11 U.S.C. § 548(a)(1)(A) must state with particularity the circumstances constituting the fraudulent conveyances. *See Seitz v. Frorer (In Re Covenant Partners, L.P.)*, 531 B.R. 84, 91 (Bankr. E.D. Pa. May 22, 2015). Although the requirements under Rule 9(b) are "generally relaxed and interpreted liberally where a trustee is asserting fraudulent transfer claims," a plaintiff cannot rely on legal conclusions and simply repeat the elements of a cause of action. *Id.*

**A.     The Adversary Complaint Fails to Sufficiently Plead Badges of Actual Fraud**

---

[1] The same analysis applicable to Count XV applies equally to Count XVII, which is brought under 11 U.S.C. §§ 544 and 550 and presumably relies on Maryland's Uniform Voidable Transactions Act, Md. Code Ann., Com. Law § 15-207. Accordingly, Count XVII fails for the same reasons as Count XV.

Generally, courts look at several factors when determining whether evidence of actual fraudulent intent is present in a complaint:

1) the transfer or obligation was to an insider; 2) the debtor retained possession or control of the property transferred after the transfer; 3) the transfer or obligation was disclosed or concealed; 4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; 5) the transfer was of substantially all of the debtor's assets; 6) the debtor absconded; 7) the debtor removed or concealed assets; 8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; 9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; 10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and 11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Id.*

30.    In this case, Plaintiff alleges that BW Capital was involved in the following fraudulent transfers:

### BW Capital Transfers

| Transfers | Date | Amount |
|:---:|:---:|:---:|
| 1 | 11/3/2021 | $13,161 |
| 2 | 11/29/2021 | $24,262 |
| 3 | 12/22/2021 | $22,000 |
| 4 | 6/29/2022 | $3,514 |
| 5 | 8/1/2023 | $31,000 |

31.     However, Plaintiff fails to allege sufficient facts supporting BW Capital's intent to defraud creditors through the applicable badges of fraudulent conduct. Instead, Plaintiff offers only conclusory assertions that certain payments constituted "fabricated" fees that were part of a broader scheme. These allegations merely recite the elements of fraud without supplying the factual content required to render the claim plausible. The only badges of fraud Plaintiff assert against BW Capital are that transfers were made "to a related entity of an insider, they were made for no consideration, and they were made while the Debtor was insolvent." But these conclusory allegations merely restate the elements of Plaintiff's claim. For example, Plaintiff offers no facts that explain how these transactions lacked consideration, including the 6/29/2022 transaction for $3,514.00 made almost a year prior to Debtor receiving any ERC credits. In addition, Plaintiff makes one conclusory statement stating, "at all relevant times in this Complaint, the Debtor was insolvent." *See All Tex. Elec. Contrs., Inc. v. NSPS Metals LLC (In re All Tex. Elec. Contrs., Inc.)*, 2022 Bankr. LEXIS 113 at *24 (S.D. Tex. Jan. 18, 2022) (noting that bald assertions about insolvency are insufficient to meet plaintiff's burden at the pleading stage). These naked assertions offer no specific date on which Debtor allegedly became insolvent and offers no facts to support Debtor's insolvency as far back as November of 2021.

32.     Lastly, Plaintiff offers no explanation for how the three (3) pre-ERC and pre-management agreement transfers made on 11/11/2021; 11/29/2021; and

11

12/22/21 constitute fraud. As a result, Plaintiff's Adversary Complaint fails to allege facts suggesting BW Capital received transfers from Debtor with the intent to defraud creditors.

**B.     The Adversary Complaint Impermissibly Relies on Group Pleading and Fails to Identify with Particularity BW Capital's Role in Any Alleged Fraud.**

33.     "In cases seeking avoidance actions where multiple payments were made to the same entity, the trustee is charged with demonstrating that each individual payment meets the elements of the avoidance action." *Id.* at *20. Moreover, "where multiple defendants are alleged to have committed fraud, the complaint must specifically allege the fraud perpetrated by each defendant— lumping all the defendants together fails to satisfy the particularity element." *Geron v. Reifer (In re Eight-115 Assocs., LLC)*, 650 B.R. 43, 56 (Bankr. S.D.N.Y. 2023).

34.     Plaintiff offers no facts that support the claim that BW Capital, specifically, engaged in actual fraud. Plaintiff claims that "**Chestnut Consulting and BW Capital** charged the Debtor purported success fees for obtaining the ERCs (and potentially other funds), even though the ERCs were obtained simply by the Debtor filing amended payroll tax returns which was done by Debtor's accountants." However, Plaintiff fails to identify which specific transfer constituted a "success fee" or what portion, if any, is attributable to BW Capital as opposed to Chestnut Consulting. Instead, the Adversary Complaint lumps Chestnut Consulting and BW Capital together without offering the specificity required under a Fed. R. Civ. P. 9(b).

12

Indeed, the Adversary Complaint is riddled with generalized and conclusory allegations against multiple entities, failing to identify the specific conduct attributable to each defendant.

35. Therefore, COUNTS XV and XVII of Plaintiff's Adversary Complaint fail to satisfy the heightened pleading standard required under Fed. R. Civ. P. 9, as incorporated through Fed. R. Bankr. P. 7009, because it neither offers sufficient badges of fraudulent intent nor does it include specific fraudulent conduct related to the alleged BW Capital transfers.

**II. COUNTS XVI and XVIII[2] of Plaintiff's Adversary Complaint Fail to State a Claim for Constructive Fraud Because They Do Not Allege Debtor Received Less Than Reasonably Equivalent Value.**

36. "Section 548 of the Bankruptcy Code permits the trustee to avoid, based on a theory of constructive fraud, any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred . . . within two years before the date of the filing of the petition, provided the debtor received less than a reasonably equivalent value in exchange for such transfer or obligation[] and either"

> (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

---

[2] The same analysis that applies to Count XVI applies to Count XVIII with the only difference being the three (3) year statute of limitations.

(II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
(III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
(IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

*Angell v. Endcom, Inc. (In re Tanglewood Farms, Inc.)*, 487 B.R. 705, 709 (Bankr. E.D.N.C. 2013).

37.     Pleadings that allege constructive fraud under 11 U.S.C. § 548(a)(1)(b) but fail to include 1) a list of the alleged fraudulent transfers, 2) identification of the consideration received by the transferee, and 3) information concerning why the consideration was not equivalent value do not satisfy the pleading requirements. *Id.* at 711.

38.     In this case, Plaintiff identifies five (5) transfers that the Debtor allegedly made to BW Capital but fails to allege any facts explaining why the Debtor did not receive reasonably equivalent value in exchange for those transactions. The Adversary Complaint does not describe the purpose of any of the five transfers, nor does it allege what, if anything, the Debtor received in return. *See id.* at 710 ("The test used to determine reasonably equivalent value in the context of a fraudulent conveyance requires the court to determine the value of what was transferred and to compare it to what was received."). Instead, Plaintiff offers only conclusory assertions that BW Capital received payments characterized as "purported

management fees, consulting fees, distributions, dividends, and other fabricated fees," without any factual basis to support those labels or to demonstrate that the transfers lacked value. Notably, four (4) of the five (5) transfers occurred months— and in some instances years—before the Debtor received any ERC funds, further undermining any inference of a unified fraudulent scheme. Accordingly, Counts XVI and XVIII of the Adversary Complaint should be dismissed.

III.   **COUNT XXI of Plaintiff's Adversary Complaint Fails to State a Claim Against Lamar Barnes for a Breach of Fiduciary Duty as a Director of the Debtor.**

39.   Maryland follows the business judgment rule when evaluating director conduct, which requires a director to (1) act in good faith, (2) in a manner he reasonably believes to be in the best interests of the corporation; and (3) with the care that an ordinary prudent person in a like position would under similar circumstances. Md. Code Ann., Corps. & Ass'ns § 2-401(a). Courts presume that corporate directors act in accordance with the business judgment rule and the plaintiff has the burden of asserting facts in the complaint that rebut this presumption. *See Oliveria v. Sugarman*, 451 Md. 208, 221 (Md. 2017). Absent a showing that officers acted fraudulently or in bad faith, a director is insulated from suit for its business decisions. *NAACP v. Golding*, 342 Md. 663, 673 (Md. 1996).

40.   The Adversary Complaint fails to allege any specific conduct by Lamar Barnes showing that he acted fraudulently or in bad faith. Accordingly, this Court

must presume that any transfers were undertaken in good faith, in the Debtor's best interests, and with ordinary care. Rather than analyzing each transfer and pleading facts showing misconduct, Plaintiff aggregates dozens of transfers to multiple entities without explaining how Mr. Barnes directed those transfers or why their amounts and timing support the alleged "scheme." Bald assertions that Mr. Barnes "looted" the company or acted "in an unchecked frenzy of self-dealing and wanton and reckless breach of fiduciary duty and loyalty to the Debtor" do nothing more than restate the elements of Plaintiff's claims. Consequently, Count XXI must be dismissed for failure to state a claim upon which relief can be granted.

**IV.   COUNT XXII of Plaintiff's Adversary Complaint Fails to State a Claim Against Lamar Barnes for a Breach of Fiduciary Duty of Loyalty to Debtor.**

41.   The duty of care and loyalty are two independent duties directors owe a corporation. *Independent Distribs. v. Katz*, 99 Md. App. 441, 461 (Ct. Spec. App 1994). A director or officer's duty of loyalty requires him or her to act in the interest of the corporation and not to advance their own personal interests. *See Storetrax.com, Inc. v. Gurland*, 397 Md. 37, 54 (Md. 2007).

42.   Here, the Adversary Complaint is fatally deficient as it fails to identify a single transfer of assets from the Debtor, or any other entity, directly to Mr. Barnes. Even if Mr. Barnes maintains ownership interests in separate entities that received transfers from the Debtor, such ownership does not constitute *per se* evidence of a

16

breach of loyalty. The Complaint lacks any non-conclusory allegations or specific facts detailing actions Mr. Barnes took to prioritize his personal interests over those of the Debtor. Consequently, Count XXII must be dismissed for failure to state a claim upon which relief can be granted.

V. **COUNTS XIX AND XX of Plaintiff's Adversary Complaint Fail to State a Claim for Joint and Several Liability Against Lamar Barnes as an Immediate or Mediate Transferee.**

43.     To sustain a claim for recovery under 11 U.S.C. § 550, a trustee must first successfully avoid a transfer under one of the Code's avoidance provisions (e.g., §§ 544, 547, or 548). Once avoided, § 550(a) permits the trustee to recover the property or its value from: (1) the initial transferee; (2) the entity for whose benefit such transfer was made; or (3) any immediate or mediate transferee of such initial transferee.

44.     The Adversary Complaint is devoid of any factual allegation that the Debtor transferred funds directly to Mr. Barnes. Under the "mere conduit" or "dominion and control" tests widely adopted by federal courts, an initial transferee must have the legal right to use the funds for their own purposes. *See, e.g., Bowers v. Atlanta Motor Speedway (In re Southeast Hotel Props. Ltd. P'ship)*, 99 F.3d 151, 154-55 (4th Cir. 1996). Here, the Plaintiff explicitly alleges that the transfers were made to corporate entities—specifically OMV Holdings, LLC and BW Capital

Advisors LLC. Because the Debtor's property was transferred to these distinct legal entities, Mr. Barnes cannot be classified as an initial transferee as a matter of law.

45.    Recovery from a "mediate" or "subsequent" transferee under § 550(a)(2) requires the Plaintiff to plead and prove that the funds moved from the initial transferee (the entity) to the subsequent transferee (Mr. Barnes). The Plaintiff's Adversary Complaint relies entirely on the conclusory "bootstrap" theory that because Mr. Barnes owns or controls the entities, he is synonymous with them. However, the Plaintiff fails to identify any specific subsequent transfer from any entity to Mr. Barnes's personal accounts. Without pleading the "who, what, when, and how" of a secondary transfer, the Plaintiff fails to bridge the gap between corporate receipt and personal liability.

46.    Lastly, under 11 U.S.C. § 502(d), the Court shall disallow any claim of an entity that is a transferee of an avoidable transfer unless such entity has paid the amount for which it is liable under § 550. Because the Plaintiff has failed to plead a prima facie case for recovery against Mr. Barnes personally under § 550, there is no legal basis to trigger the disallowance provisions of § 502(d). A claim for disallowance cannot stand where the underlying avoidance action fails to meet the basic pleading requirements of Rule 8 and Rule 9(b).

**CONCLUSION**

47.    The Plaintiff's Adversary Complaint is a paradigmatic example of "group pleading," relying on inflammatory labels and generalized "schemes" rather than the specific factual allegations required by the Federal Rules of Civil Procedure. While the Trustee seeks to recover millions of dollars, the Complaint fails to bridge the fundamental gap between corporate-level transfers and the personal liability of Mr. Barnes.

48.    As demonstrated herein, the Plaintiff has failed to meet the heightened pleading standards of Rule 9(b) for actual fraud, has failed to allege a lack of reasonably equivalent value for constructive fraud, and has failed to identify a single transfer that would render Mr. Barnes an "initial" or "mediate" transferee under 11 U.S.C. § 550. Furthermore, the Plaintiff's attempt to circumvent the business judgment rule and the protections of corporate form through conclusory assertions of "looting" and "self-dealing" is insufficient to rebut the legal presumptions afforded to directors and officers under Maryland law.

49.    Ultimately, an adversary proceeding cannot serve as a substitute for the discovery the Trustee failed to develop in the underlying Bankruptcy Case. Because the Complaint fails to state a plausible claim for relief and does not provide Defendants with the requisite notice to prepare a meaningful defense, this Court

should grant the Motion and dismiss all counts against Lamar Barnes and BW

Capital Advisors LLC.


/s/Martinis M. Jackson
Jackson Legal Services PLLC
1629 K Street, N.W.
Suite 300
Washington, D.C. 20006
240.763.7529
Federal Bar No. 21465
*Limited Appearance Counsel for Lamar Barnes and BW Capital Advisors, LLC*

20

CERTIFICATE OF SERVICE

I, Martinis M. Jackson, do hereby certify that I have transmitted via Electronic Case Filing, as it appears on this date in the Court registered E-filers of CM-ECF, a true and accurate copy of the above and foregoing Motion to Dimiss to the below parties:

Bankruptcy Counsel to Morgan W. Fisher, Chapter 7 Trustee
Richard M. Goldberg
Daniel J. Zeller
Shapiro Sher Guinot & Sandler
250 W. Pratt Street, Suite 2000
Baltimore, Maryland 21201

and

RICHARD J. HACKERMAN, P.C.
ATTORNEY AT LAW
3635 Old Court Road
Suite 208,
Baltimore, Maryland 21208
Tel. (410) 243-8800,
Fax (410) 402-5757
*Counsel for the Defendants Chestnut Business Consulting, LLC and Lonnie B. Chestnut, III*


/s/Martinis M. Jackson
MARTINIS M. JACKSON