**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| **In re:** | * | |
| | | **Case No.: 24−11528-DER** |
| **PROVIZOR FEDERAL, INC.,** | * | |
| | | **Chapter 7** |
| Debtor. | * | |
| | | |
| * * * * * * * | * * * * * * | |
| **MORGAN W. FISHER,** | | |
| **CHAPTER 7 TRUSTEE** | * | |
| | | |
| Plaintiff, | * | **Adv. Proc. No.: 26-00040-DER** |
| | | |
| v. | * | |
| | | |
| **IMPEL CAPITAL MANAGEMENT,** | * | |
| **LLC, et. al.[1],** | | |
| | * | |
| Defendants. | | |
| * * * * * * * | * * * * * * | |

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS LAMAR BARNES AND
BW CAPITAL ADVISORS LLC T/A BW CAPITAL ADVISORS'
<u>MOTION TO DISMISS PLAINTIFF'S ADVERSARY COMPLAINT</u>**

Morgan W. Fisher, Chapter 7 Trustee (the "**Trustee**" or the "**Plaintiff**") for Provizor

Federal, Inc. f/k/a OMV Medical, Inc. (the "**Debtor**") files this opposition to the Defendants Lamar

Barnes and BW Capital Advisors LLC T/A BW Capital Advisors' Motion to Dismiss Plaintiff's

Adversary Complaint (the "**Motion to Dismiss**") [ECF No. 14, April 15, 2026], and states as

follows:

---

[1] Defendants in the above captioned adversary proceeding are: Impel Capital Management, LLC ("**Impel Management**"), OMV Holdings, LLC ("**OMV Holdings**"), Chestnut Business Consulting LLC ("**Chestnut Consulting**"), BW Capital Advisors, LLC t/a BW Capital Advisors "**BW Capital**"), Lamar Barnes ("**Mr. Barnes**") and Lonnie Chestnut, III ("**Mr. Chestnut**").

**BACKGROUND**

1.      On February 26, 2024 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On May 16, 2024, the Court converted this case to a case under Chapter 7, and Morgan Fisher was thereafter appointed as Chapter 7 Trustee.

2.      On February 24, 2026, the Plaintiff filed the Trustee's Complaint for Avoidance and Recovery of Fraudulent Conveyances and Preferences, Fraud, Breach of Directors Standard of Care, Breach of Duty of Loyalty, and Breach of Fiduciary Duty (Sections 544, 547, 548 and 550) (the "**Complaint**") [ECF No. 1], thereby initiating the above captioned Adversary Proceeding.[2]  The Complaint alleges that the Barnes and Chestnut, as directors and officers of the Debtor, engaged in a coordinated scheme to cause the Debtor to make significant avoidable transfers to entities under their control (OMV Holdings, Impel Management, Chestnut Consulting, and BW Capital), which in turn transferred such amounts to them individually.

3.      The Complaint sets forth the following causes of action, grouped by Defendant:

   a.      Counts I – V against OMV Holdings seek the avoidance of the OMV Transfers (totaling $7,757,163.00) as fraudulent transfers and preferences.

   b.      Counts VI – X against Impel Management seek the avoidance of the Impel Transfers (totaling $3,029,244.00) as fraudulent transfers and preferences.

   c.      Counts XI – XIV against Chestnut Consulting seek the avoidance of the Chestnut Consulting Transfers (totaling $93,486.00) as fraudulent transfers.

   d.      Counts XV – XVIII against BW Capital seek the avoidance of the BW Capital Transfers (totaling $93,938.00) as fraudulent transfers.

   e.      Count XIX against Mr. Barnes and Mr. Chestnut seeks the recovery of all the aforementioned Transfers (totaling $10,973,831.00) from Mr. Barnes and Mr. Chestnut as subsequent transferees under Section 550(a)(2).

   f.      Count XX against all Defendants seeks the disallowance of any claims under Section 502(d).

---

[2] The Complaint is incorporated by reference.  Capitalized terms not defined herein shall have the meaning ascribed in the Complaint.

      g.      Counts XXI – XXII against Mr. Barnes and Mr. Chestnut assert claims for breach of fiduciary duty under state law.

4.      The Complaint describes in detail the extensive connections between Mr. Barnes and Mr. Chestnut, on one hand, and the Debtor and initial transferee Defendants (OMV Holdings, Impel Management, BW Capital, and Chestnut Consulting), on the other hand, as well as the control that Mr. Barnes and Mr. Chestnut held over the Debtor and initial transferee Defendants.

5.      Regarding the connections and control of Mr. Barnes and BW Capital (as movants in the Motion to Dismiss)[3], the following facts are alleged:

      a.      Mr. Barnes was an officer and director of the Debtor.  Compl. ¶ 7.  The Debtor's bankruptcy petition was authorized by Mr. Barnes as Chairman.  Compl. ¶ 14.

      b.      Mr. Barnes is an owner and principal of initial transferees OMV Holdings and Impel Management.  Compl. ¶ 7.

      c.      OMV Holdings was the 100% owner of the Debtor.  Compl. ¶¶ 4, 14.  Mr. Barnes was on the Board of Managers of OMV Holdings.  Compl. ¶ 4.

      d.      In turn, OMV Holdings was 72.5% owned by non-defendant Impel Capital, LLC ("**Impel Capital**").[4]  Compl. ¶ 4.  Mr. Barnes was an owner and member of Impel Capital.  Compl. ¶ 15.  Mr. Barnes filed Articles of Cancellation for Impel Capital post-conversion.  Compl. ¶ 15.

      e.      Impel Management was owned directly or derivatively (via Impel Capital) by Mr. Barnes and Mr. Chestnut.  Compl. ¶ 3.  In January 2022, Mr. Barnes caused the Debtor to enter into a Management Agreement with Impel Management, pursuant to which the Defendants

---

[3] Mr. Chestnut and Chestnut Consulting have filed an Answer [ECF No. 13, April 13, 2026]. Similar allegations are made against Mr. Chestnut.  Clerk's Entry of Default have been entered as to Impel Management [ECF No. 39, May 5, 2026] and OMV Holdings [ECF No. 40, May 5, 2026].

[4] The Plaintiff reserves the right to file an amended Complaint naming Impel Capital as a defendant should evidence indicate it was an initial or subsequent transferee of any funds at issue.

purported to provide consulting services to the Debtor (including through BW Capital or Mr. Barnes).  Compl. ¶ 17.

        f.      BW Capital is owned 100% by Mr. Barnes.

6.      The Complaint further describes in detail that Mr. Barnes (along with Mr. Chestnut) engaged in a years-long scheme (under their control and direction) to transfer as much money as they could out of the Debtor, to the entities under their control (the initial transferee Defendants) and then to themselves individually.  Compl. ¶¶ 16, 18, 21 ("drained the Debtor of essentially all of its operating capital"), Compl. ¶ 22 ("was carried out without any formal board meetings or approvals").  These initial transfers from the Debtor to the initial transferee Defendants were disguised as distributions, management fees, success fees, consulting fees, or other obligations.  Compl. ¶¶ 16, 18.  All of the transfers implicated in the Count are identified by transferee, date and amount in Exhibit A to the Complaint.  Specifically, the following facts are alleged:

        a.      OMV Holdings was formed in April 2021 and acquired the Debtor in October 2021.  Compl. ¶ 4.  Beginning in March 2022 and continuing at regular intervals until January 2024 (one month before the Petition Date), the Debtor made significant lump sum transfers to OMV Holdings when it had the ability to do so.  *See* Exhibit A to the Complaint.

        b.      In late 2021, the Debtor began making transfers to BW Capital.  *See* Exhibit A to Complaint.

        c.      In January 2022, Mr. Barnes caused the Debtor to enter into the Management Agreement with Impel Management.  Compl. ¶ 17.  The Management Agreement was part of the scheme to develop cover for the Defendants to charge fees to the Debtor.  Compl. ¶ 18.  Beginning in early 2022 and continuing at regular intervals until February 1, 2024 (weeks before the Petition Date), the Debtor made significant lump sum transfers to Impel Management when it had the ability to do so.  *See* Exhibit A to the Complaint.

d.      In April 2023, Loyal Source Government Services LLC ("**Loyal Source**") filed an arbitration case against the Debtor, resulting in an arbitration award of $12 million. Compl. ¶ 28; *see also* Loyal Source Proof of Claim No. 10 (August 16, 2024) filed in main bankruptcy case in the amount of $15,624,242.32.[5]  As Mr. Barnes and the Court are aware, the Debtor's breaches at issue in the Loyal Source arbitration were long-standing.  For example, in the Arbitrator's Opinion and Interim Order (November 21, 2023), attached to the Loyal Source Proof of Claim, the Arbitrator determined that "*[o]ver the course of many years* [the Debtor] repeatedly failed to pay Loyal Source millions of dollars due" under the parties' Subcontract Agreement. *See* Opinion and Interim Order, attached to Loyal Source Proof of Claim No. 10 as <u>Exhibit F</u>, at p. 16; *see also Id.* p. 17 ("failed to explain, or account for millions of dollars … *after [the Debtor] was acquired by Impel Capital on October 18, 2021*").  The logical inference is that the Debtor's insolvency and financial distress were present at all times relevant to the Complaint. Compl. ¶ 28.

e.      On March 27, 2023 and July 6, 2023, the Debtor obtained ERCs in the amounts of $2,520,694.99 and $5,630,552.92, respectively.  Compl. ¶ 20.  Mr. Barnes and Mr. Chestnut immediately transferred the majority of such amounts to OMV Holdings and Impel Management, and then to themselves.  Compl. ¶ 20.  As demonstrated on <u>Exhibit A</u> to the Complaint, on March 28-29, 2023, the Debtor transferred $1,885,166 in aggregate out to OMV Holdings and Impel Management. On July 7, 2023, the Debtor transferred $3,539,143 in aggregare out to OMV Holdings and Impel Management.  *Id*.  Additionally, BW Capital charged the Debtor a success fee for obtaining the ERCs, but provided no services with respect thereto.  Compl. ¶ 20.

f.      On January 4, 2024, the Debtor transferred $1,000,000 to OMV Holdings. *See* <u>Exhibit A</u> to Complaint.  This was one day prior to the District Court hearing on confirmation

---

[5] The Court may consider documents integral to and relied on in the Complaint at the dismissal stage.  The Court may also take judicial notice of items in the public record.  *See, e.g., Sher v. Luxury Mortg. Corp.*, No. ELH-11-3656, 2012 WL 5869303, at *4-7 (D. Md. Nov. 19, 2012).

of the Loyal Source arbitration award against the Debtor.  *See* Order [ECF No. 46, January 5, 2024] in District Court Case No. 1:23-cv-02889-SAG.

**MR. BARNES FLOUTS RULE 2004 DISCOVERY**

7.     Prior to the filing of the Complaint, Mr. Barnes (along with Mr. Chestnut and Impel Management) engaged in a coordinated campaign to thwart the Trustee's basic discovery efforts, in violation of the requirements of Fed. R. Bank. P. 2004 and their own agreed Consent Order.

8.     In June of 2025, the Trustee filed motions for Rule 2004 examinations on OMV Holdings, Impel Management, Impel Capital, Mr. Barnes and Mr. Chestnut.  *See* ECF Nos. 432-436 in main bankruptcy case.  OMV Holdings and Impel Capital did not respond to the motions and default orders were entered.  *See* ECF Nos. 442 and 443.  Impel Management, Mr. Barnes and Mr. Chestnut, by counsel representing them at that time, entered into a Stipulation and Consent Order [ECF No. 464, July 8, 2025] in which they *agreed and promised* to produce documents to the Trustee.   In the Stipulation and Consent Order, they promised to produce the following documents:

a.     The Operating Agreement, as amended for, Impel Management.

b.     Financial documents regarding the Transfers at issue in the Complaint, including both the initial transfers from the Debtor to the initial transferee Defendants and the subsequent transfers to the Mr. Barnes and Mr. Chestnut.

c.     Monthly invoices for Impel Management from October 1, 2021 to the Petition Date.

d.     Tax return information evidencing distributions or income from the Debtor, OMV Holdings, and Impel Capital, including all distributions initially made by the Debtor and ultimately received by Mr. Barnes, Mr. Chestnut, and Impel Management.

6

e.      Bank statements evidencing distributions or deposits from the Debtor, OMV Holdings, and Impel Capital, including all distributions initially made by the Debtor and ultimately received by Mr. Barnes, Mr. Chestnut, and Impel Management.

9.      On October 22, 2025, after Mr. Barnes (and the others) went silent as to their productions, the Trustee filed a motion to enforce the 2004 productions.  *See* ECF No. 497. Counsel for Mr. Barnes, Mr. Chestnut and Impel Management moved to withdraw [ECF No. 495] and filed a frivolous opposition [ECF No. 501].  On November 26, 2025, the Court entered an Order [ECF No. 522] granting the Trustee's motion to enforce that required the respondents to make their production by December 10, 2025, under threat of sanctions.  Mr. Barnes, Mr. Chestnut and Impel Management did not comply.

10.     On December 19, 2025, Mr. Barnes, pro se, filed a motion to quash [ECF No. 541], in which he untruthfully attested that he had no interest in or control over any of the Defendants. He did not address his failure to produce *his own* bank statement and tax returns.  On January 5, 2026, the Trustee filed an opposition [ECF No. 543] which detailed Mr. Barnes recalcitrance and requested the imposition of sanctions for intentionally thwarting the Trustee's legitimate discovery.   Mr. Barnes failed to appear at the hearing *on his motion* on January 20, 2026.  On January 23, 2026, the Court entered an Order [ECF No. 548] denying Mr. Barnes motion that expressly provided that "discovery pursuant to Fed. R. Bankr. P. 2004 and the Order previously entered by the Court shall continue notwithstanding any Adversary Proceedings(s) subsequently filed in this bankruptcy."

11.     Thus, due to Mr. Barnes' (and Mr. Chestnut's) refusal to comply with the Court's 2004 orders, the Plaintiff expects that the facts herein will be supplemented by discovery, and/or amendment to this Complaint as necessary, once compliance takes place.  Likewise, Plaintiff reserves the right to again seek sanctions for Mr. Barnes' conduct.

12.     In that regard, on May 6, 2026, the Court entered an Order [ECF No. 42] in this Adversary Proceeding that requires that "Defendants shall comply with the 2004 Orders within twenty-one (21) days of entry of this Order."

## ARGUMENT

13.     A pleading need only contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2), made applicable herein by Bankruptcy Rule 7008. To defeat a motion to dismiss under Fed. R. Civ. P. 12(b)(6), as made applicable herein by Bankruptcy Rule 7012, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). When assessing plausibility, well-pleaded factual allegations must be accepted as true and such facts and all reasonable inferences derived from those allegations must be viewed in the light most favorable to the plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Plausibility is established when the complaint's factual allegations give rise to an inference of liability sufficient to move the claims "'across the line from conceivable to plausible.'" *Iqbal, supra* at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). This analysis is context specific, calling for the court to apply judicial experience and common sense. *Iqbal, supra* at 679.

### A.     The Actual Fraud Counts (XV and XVII) Against BW Capital State Plausible Claims

14.     First, Defendant BW Capital generally argues that the actual fraud transfer claims (Counts XV and XVII)[6] are not pleaded with particularity as required by Fed. R. Civ. P. 9(b) and do not include sufficient badges of fraud.

---

[6] Count XV is based on Section 548(a)(1)(A).  Count XVII is based on Section 544(b) and applicable state law.  The Motion to Dismiss presumes that "the same analysis is applicable" to both counts. *See* Motion to Dismiss ¶ 28, fn. 1.

8

15.    Critically, BW Capital improperly states the viewpoint as focused on *BW Capital's intent*, rather than the Debtor's.  Motion to Dismiss ¶ 31 ("Plaintiff fails to allege sufficient facts supporting *BW Capital's intent to defraud creditors*"); Motion to Dismiss ¶ 34 ("Plaintiff offers no facts that support the claim that *BW Capital, specifically, engaged in actual fraud*.").  That is not what Section 548(a)(1)(A) requires; the statute expressly addresses situations in which "*the debtor*, voluntarily or involuntarily … *made such transfer* or incurred such obligation with *actual intent to hinder, delay, or defraud*" present or existing creditors.  11 U.S.C. § 548(a)(1)(A) (emphasis supplied).  Plaintiff's Complaint was rightly focused on alleging the Debtor's actual intent, and the Motion to Dismiss should be denied for this reason alone.

16.    Moving beyond this infirmity, because actual fraud transfer claims evaluate subjective intent, courts necessarily engage in a factually intense assessment of the totality of the circumstances surrounding a challenged transfer to infer the existence of such intent. *See, e.g., Tronox Inc. v. Kerr McGee Corp. (In re Tronox Inc.)*, 503 B.R. 239, 276-91 (Bankr. S.D.N.Y. 2013). Such circumstantial evidence includes a non-exhaustive list of "badges of fraud," motive, the natural consequences and effect of the transfer, preference of one creditor over another, and any other facts that may support an inference of actual intent in the particular case.  *See, e.g., ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 364-94 (S.D. Tex. 2008). Badges of fraud recognized by courts include, but are not limited to, lack or inadequacy of consideration, insolvency or undercapitalization, whether the transfer was at arm's length, secrecy or concealment, a departure from usual methods of business, and a pattern of conduct after the onset of financial difficulties.  *See, e.g., In re Maryland Prop. Assocs., Inc.*, 2007 WL 1074069, at *21 (Bankr. D. Md. Jan. 31, 2007); *see also In re Babb*, 358 B.R. 343, 350 (Bankr. E.D. Tenn. 2006)

(compiling badges of fraud).[7]   Bankruptcy courts have routinely concluded that relaxing the particularity standard of Rule 9(b) is appropriate where the fraud claims are brought by a bankruptcy trustee.  *Sher v. JPMorgan Chase Funding (In re TMST, Inc.)*, 610 B.R. 807, 824 (Bankr. D. Md. 2019) (compiling sources).

17.     As set forth above, the Plaintiff has alleged a general pattern of conduct (a recognized badge of fraud) following the Debtor's acquisition by OMV Holdings in late 2021, in which the Debtor (controlled by Mr. Barnes and Mr. Chestnut) made suspect transfers to entities that Mr. Barnes and Mr. Chestnut owned or controlled (such as BW Capital) without consideration, without formal board meetings or approval, and while the Debtor was in financial distress. Embedded within this general pattern are facts specific to the transfers that the Debtor made to BW Capital.  These allegations are sufficient to cover all of the transfers to BW Capital, beginning in November 2021.[8]  For example, as to the August 1, 2023 transfer from the Debtor to BW Capital in the amount of $31,000, the Plaintiff has specifically alleged that this was an unjustified success fee for obtaining the ERCs.[9]

18.     To be clear, the Complaint is supported by factually detailed allegations and does not rely on conclusory restatements of elements.  Mr. Barnes is alleged to have been an officer and

---

[7] The *Babb* court set forth an extensive list: "(i) the lack of adequate consideration for the transfer; (ii) the family, friendship, or close relationship between the parties; (iii) the retention of possession, benefit, or use of the property in question by the debtor; (iv) the financial condition of the party sought to be charged prior to and after the transaction in question; (v) the conveyance of all of the debtor's property; (vi) the secrecy of the conveyance; (vii) *the existence or cumulative effect of a pattern or series of transactions or course of conduct after incurring of debt, onset of financial difficulties, or pendency or threat of suit by creditors*; and (viii) t*he general chronology of events and transactions under inquiry*."  358 B.R. at 350 (emphasis supplied).

[8] The BW Capital Transfers are: (1) 11/3/2021 - $13,161; (2) 11/29/2021 - $24,262; (3) 12/22/2021 - $22,000; (4) 6/29/2022 - $3,514; and (5) 8/1/2023 - $31,000.

[9] The Debtor made transfers in the amount of $31,000 to both Chestnut Consulting and BW Capital on August 1, 2023, just after receiving the second instalment of the ERC on July 6, 2023.  The only logical inference is that this is the "success fee" discussed in ¶ 20 of the Complaint.

director of the Debtor during the relevant period.  BW Capital is alleged to be 100% owned by Mr. Barnes.  The Debtor's transfers to BW Capital are alleged to be bogus, disguised as consulting or success fees, for which no services were actually provided.  Insolvency during all relevant times is supported by the both the totality of the allegations of the Complaint (seeking to avoid more than $10 Million in transfers) and the Loyal Source Proof of Claim, which presumes that the Debtor's breaches of contract began "years" before the arbitration was initiated.  Exhibit A to the Complaint provides the date and amount of implicated transfers.  The Complaint is sufficient to put BW Capital on notice of the claims against it.  *In re TMST, Inc.*, 610 B.R. 807, 824 (Bankr. D. Md. 2019) (while "allegations of 'date, place or time' fulfill these functions … [p]laintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud") (compiling sources).

**B.      The Constructive Fraud Counts (XV and XVII) Against BW Capital State Plausible Claims**

19.      Second, Defendant BW Capital argues that the constructive fraud transfer claims (Counts XVI and XVIII)[10] should be dismissed because the Complaint fails to allege lack of reasonably equivalent value in return.  Under Section 548(a)(1)(B), a trustee may avoid a transfer if the debtor "received less than a reasonably equivalent value in exchange for such transfer" and the debtor was insolvent or rendered insolvent thereby (or was otherwise undercapitalized or intended to incur debts that would be beyond the debtor's ability to pay).  11 U.S.C. § 548(a)(1)(B).

20.      Reasonably equivalent value is a "fact-driven determination based upon a review of the circumstances of a particular case." *Hutson v. Greenwich Ins. Co. (In re E-Z Serve Convenience Stores, Inc.)*, 377 B.R. 491, 502 (Bankr. M.D.N.C. 2007).  Whether reasonably

---

[10] Count XVI is based on Section 548(a)(1)(B).  Count XVIII is based on Section 544(b) and applicable state law.  The Motion to Dismiss presumes that "the same analysis [] applies" to both counts.  *See* Motion to Dismiss ¶ 36, fn. 2.

equivalent value was received by the debtor on the date of transfer is a two step analysis: (1) did the debtor receive value, and (2) was the payment reasonably equivalent to the value extended? *See Cohen v. Un-Ltd. Holdings, Inc. (In re Nelco, Ltd.)*, 264 B.R. 790, 813-14 (Bankr. E.D. Va. 1999) (explaining good faith of transferee and whether there was an arm's length transaction between willing parties is relevant to whether reasonably equivalent value was exchanged).  The proper focus is on the net effect of the transfers on the debtor's estate, the funds available to the unsecured creditor.  *In re Jeffrey Bigelow Design Grp., Inc.*, 956 F.2d 479, 484 (4th Cir. 1992).

21.    As discussed above, the Complaint alleges that the transfers to BW Capital were for purported consulting or success fees for which BW Capital did not provide any services and for which the Debtor did not receive any value or derive any benefit.  The Complaint further alleges that the BW Capital Transfers were made by the Debtor as part of Mr. Barnes' and Mr. Chestnut's plan to divert the Debtor's operating cash and other funds to their entities.  Given that Mr. Barnes was on both sides of the transfers, the logical inference to be drawn from the allegations is that BW Capital did not act in good faith and transfers were not made at arm's length.[11]   This is sufficient to overcome a motion to dismiss.

### C.    Count XXI States a Plausible Claim for Breach of Director Standard of Care Against Mr. Barnes

22.    Third, Mr. Barnes argues that the breach of director duty of care claim under Md. Code Ann., Corps. & Ass'ns § 2-405.1(c)[12] (Counts XXI) should be dismissed because under the

---

[11] The fact four of the five transfers occurred in 2021-2022, before the ERC funds were received in 2023, does not undermine these allegations.  The Complaint alleges that the Mr. Barnes and Mr. Chestnut caused the Debtor to make the challenged transfers at their whims, when the Debtor had funds to transfer out.

[12] This section provides: "A director of a corporation shall act: (1) In good faith; (2) In a manner the director reasonably believes to be in the best interests of the corporation; and (3) With the care that an ordinarily prudent person in a like position would use under similar circumstances."

business judgment rule, directors are presumed to act in accordance with the applicable standard[13], and the Complaint fails to allege specific conduct by Mr. Barnes to show that he acted fraudulently or in bad faith.

23.    To state the obvious, Mr. Barnes' argument that "this Court *must presume that any transfers* were undertaken in good faith, in the Debtor's best interests, and with ordinary care" (Motion to Dismiss ¶ 40, emphasis supplied) is unsupported and contrary to bankruptcy law. Sections 544, 547, 548, and 550 govern the avoidance and recovery of the challenged transfers, not the corporate director liability standard under Maryland law. For the avoidance of doubt, the Court should deny any argument that seeks the back-door dismissal of the predicate Bankruptcy Code avoidance Counts I through XX.[14]

24.    Even as to personal liability for damages under § 2-405.1, the presumption "merely places the burden upon the person attacking the directors' decision to prove a lack of good faith or the absence of an informed basis for the challenged decision." *709 Plaza, LLC v. Plaza Condo., Inc.*, No. 0238, Sept.term,2023, 2024 WL 3665312, at *6 (Md. Ct. Spec. App. Aug. 6, 2024) (citing *Eastland Food Corp. v. Mekhaya*, 486 Md. 1, 35, 43 (2023) (Booth, J., concurring)). "Once a challenger 'presents evidence adequate to rebut the presumption, the burden of production shifts back to the corporation or the directors, as the case may be, to present evidence that the directors acted in accordance with Section 2-405.1.'" *Id*. For example, in *Eastland*, the court held that the plaintiff alleged facts sufficient to overcome the presumption where the directors had permitted

---

[13] *See, e.g.*, Md. Code Ann., Corps. & Ass'ns § 2-405.1(g) ("An act of a director of a corporation is presumed to be in accordance with subsection (c) of this section."); *709 Plaza, LLC v. Plaza Condo., Inc.*, No. 0238, Sept.term,2023, 2024 WL 3665312, at *5 (Md. Ct. Spec. App. Aug. 6, 2024) ("the business judgment rule expresses a presumption that a director of a Maryland corporation has acted 'on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company'").

[14] Indeed, it is Mr. Barnes' actual intent to hinder, delay, and defraud creditors that is imputed to the Debtor for purposes of the fraudulent transfers.

two of the owners "to loot the company by taking corporate funds for personal use."  486 Md. at 35 ("At the pleading stage, these allegations suffice to overcome section 2-405.1's presumption that the directors complied with the standard of care.").

26.     Applied here, the Complaint alleges that, over a period of years, Mr. Barnes, along with Mr. Chestnut, acted to cause the Debtor to make the fraudulent transfers, under various guises, to distribute exorbitant sums, consisting of essentially all of the Debtor's operating cash and other funds, to entities under their control.  Mr. Barnes, along with Mr. Chestnut, acted in an unchecked manner, without formal board meetings and approvals.  Their ultimate goal was self-enrichment, resulting in the demise of the Debtor.  These allegations are sufficient to allege that Mr. Barnes was not acting good faith or in a reasonably belief that such actions were in the best interests of the company. *709 Plaza, LLC v. Plaza Condo., Inc.*, No. 0238, Sept.term,2023, 2024 WL 3665312, at *6 (Md. Ct. Spec. App. Aug. 6, 2024) ("directors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally").

**D.     Count XXII States a Plausible Claim for Breach of Duty of Loyalty Against Mr. Barnes**

26.      Fourth, Mr. Barnes argues that the breach of duty of loyalty claim (Counts XXII) should be dismissed because the Complaint "fails to identify a single transfer from the Debtor, or any other entity, directly to Mr. Barnes." Motion to Dismiss ¶ 42.  As discussed above, Mr. Barnes is in violation of his Court-ordered duty to produce documents to the Trustee which evidence the flow of funds from the Debtor, to the immediate transferees (Defendants OMV Holdings, Impel Management, Chestnut, Consulting, and BR Capital) and then to himself as subsequent transferee. The Trustee has been trying to obtain these documents since June 2025.

27.     The Complaint plainly alleges, with detail, that more than $10 Million in transfers went from the Debtor to the immediate transferee Defendants, which Mr. Barnes, directly or

indirectly, owned or controlled.  Drawing all inferences in favor of the Plaintiff at the pleading stage, the Complaint plausibly alleges that Mr. Barnes (along with Mr. Chestnut) were the ultimate transferees or beneficiaries of these transfers.  Any other inference defies common sense.

28. At a more basic level, Mr. Barnes, as officer of the Debtor, is alleged to have made fraudulent transfers of the Debtor's operating cash to entities he owned or controlled, resulting in the Debtor's bankruptcy.  These allegations assert that he was self-dealing as a matter of course and are sufficient to state a claim for breach of the duty of loyalty.  *See, e.g., Leavy v. Am. Fed. Sav. Bank*, 136 Md. App. 181, 764 A.2d 366 (2000) (corporate officer breached his fiduciary duties by secretly taking loan brokerage fee for making loan to troubled borrower and then fraudulently conveying funds to his son); *see generally, Weaver v. ZeniMax Media, Inc.*, 175 Md. App. 16, 55, 923 A.2d 1032, 1054–55 (2007) ("A corporate director's or officer's duty of loyalty to the corporation is broad: The duty of loyalty takes no canonical form. It is as complex as corporate interests and officer temptations and means of descent from grace. … Corporate officers and directors are not permitted to use their position of trust and confidence to further their private interests.").

### E. Count IX of the Complaint States a Plausible Claim for Recovery from Mr. Barnes as a Subsequent Transferee of Avoidable Transfers

29. Fifth, Mr. Barnes argues the Count IX of the Complaint fails to state a claim against Mr. Barnes as a subsequent transferee under Section 550(a)(2)[15], because the Complaint "fails to identify any specific subsequent transfer from any entity to Mr. Barnes's personal accounts." Motion to Dismiss ¶ 45.  Tellingly, Mr. Barnes scolds the Trustee that "an adversary proceeding cannot serve as a substitute for the discovery the Trustee failed to develop in the underlying

---

[15] Because "Mr. Barnes and Mr. Chestnut were the people for whom the OMV Transfers, Impel Management Transfers, Chestnut Consulting Transfers and BW Capital Transfers were made" (Compl. ¶ 27), the Plaintiff reserves the right to seek to amend the Complaint to add claims for direct recovery under Section 550(a)(1) as "the entity for whose benefit such transfer was made."

Bankruptcy Case."   Motion to Dismiss ¶ 49.   Mr. Barnes' transparently misleading argument overlooks the record in this Bankruptcy Case (detailed above): Mr. Barnes has repeatedly violated the Court's Orders obligating him to produce documents to the Trustee regarding this very issue. Mr. Barnes' argument should be denied for this reason alone.

30.     Additionally, as stated above, drawing all inferences in favor of the Plaintiff at the pleading stage, the Complaint plausibly alleges that Mr. Barnes (along with Mr. Chestnut) were the ultimate transferees or beneficiaries of these transfers.   Any other inference defies common sense.[16]   The Trustee has properly plead recovery from Mr. Barnes under Section 550.

31.     Finally, because the avoidance counts stand, Defendants request for dismissal of Count XX for disallowance under Section 502(d) should be denied.

WHEREFORE, for the foregoing reasons, the Plaintiff respectfully requests that the Motion to Dismiss be denied and for such other and further relief as is just and equitable.

Dated: May 8, 2026

/s/ *Richard M. Goldberg*
Richard M. Goldberg, Bar No. 07994
Daniel J. Zeller, Fed. Bar No. 28107
SHAPIRO SHER GUINOT & SANDLER
250 W. Pratt Street, Suite 2000
Baltimore, Maryland 21201
Tel: 410-385-4274
Fax: 410-539-7611
Email: rmg@shapirosher.com
         djz@shapirosher.com

*Counsel to Plaintiff Morgan W. Fisher,
Chapter 7 Trustee*

---

[16] Again, the Plaintiff notes that OMV Holdings and Impel Management, the initial transferee Defendants, are not defending this action.

## CERTIFCATE OF SERVICE

I HEREBY CERTIFY that on the 8th day of May, 2026, I reviewed the Court's CM/ECF system and it reports that an electronic copy of the *Trustee's Opposition* will be served electronically by the Court's CM/ECF system on the following:

Richard J Hackerman, Esquire - Richard@RichardHackerman.com, 6923530420@filings.docketbird.com; Hackerman.RichardR106256@notify.bestcase.com
***Counsel for Chestnut Business Consulting LLC and Lonnie Chestnut, III***

Martinis Montrelle Jackson, Esquire - martinis.jackson@jlegalservices.com
***Counsel for BW Capital Advisors, LLC t/a BW Capital Advisors and Lamar Barnes***

/s/ *Daniel J. Zeller*
Daniel J. Zeller

17