**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | | |
|---|---|---|
| **In re:** | * | |
| | | **Case No.: 24−11528-DER** |
| **PROVIZOR FEDERAL, INC.,** | * | |
| | | **Chapter 7** |
| Debtor. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| **MORGAN W. FISHER,** | | |
| **CHAPTER 7 TRUSTEE** | * | |
| | | |
| Plaintiff, | * | **Adv. Proc. No.: 26-00040-DER** |
| | | |
| **v.** | * | |
| | | |
| **IMPEL CAPITAL MANAGEMENT,** | * | |
| **LLC, et. al.[1],** | | |
| | * | |
| Defendants. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**
**AGAINST OMV HOLDINGS, LLC**

Morgan W. Fisher, Chapter 7 Trustee (the "**Trustee**" or the "**Plaintiff**") for Provizor

Federal, Inc. f/k/a OMV Medical, Inc. (the "**Debtor**"), by his undersigned counsel and pursuant to

Fed. R. Civ. P. 55(b) as made applicable by Fed. R. Bankr. P. 7055, hereby files this Motion for

Default Judgment and seeks entry of judgment by default against Defendant OMV Holdings, LLC

("**OMV Holdings**" or the "**Defendant**") in the above-captioned adversary proceeding and, as

reason therefor, states as follows:

### I. Procedural Background

1.      On February 24, 2026, the Plaintiff filed the Trustee's Complaint for Avoidance

---

[1] Defendants in the above captioned adversary proceeding are: Impel Capital Management, LLC ("**Impel Management**"), OMV Holdings, LLC ("**OMV Holdings**"), Chestnut Business Consulting LLC ("**Chestnut Consulting**"), BW Capital Advisors, LLC t/a BW Capital Advisors "**BW Capital**"), Lamar Barnes ("**Mr. Barnes**") and Lonnie Chestnut, III ("**Mr. Chestnut**").

and Recovery of Fraudulent Conveyances and Preferences, Fraud, Breach of Directors Standard of Care, Breach of Duty of Loyalty, and Breach of Fiduciary Duty (Sections 544, 547, 548 and 550) (the "**Complaint**") [ECF No. 1], thereby initiating the above captioned Adversary Proceeding.[2]   Among other things, the Complaint alleges that the Debtor made substantial avoidable transfers to the Defendant, and asserts counts for the avoidance and recovery of such transfers.  *See* Complaint, Counts I-V.

2.      On February 25, 2026, the Court issued its Writ of Summons (the "**Summons**") [ECF No. 2].  On the same day, the Plaintiff served the Defendant with the Complaint and the Summons by mailing a copy thereof to: (i) the Defendant's resident agent, The Corporation Trust Incorporated, 2405 York Road, Suite 201, Timonium, Maryland 21093 and (ii) the Defendant's officer/agent, 6700 Alexander Bell Drive, Suite 200, Columbia MD 21046, Attn: Lamar Barnes, Authorized Person.  *See* Affidavit of Service [ECF No. 3].  The Summons directed the Defendant to file a response thereto pursuant to Bankruptcy Rule 7012, *i.e.*, within thirty (30) days of the date of issuance, or March 27, 2026.  The Defendant failed to plead or otherwise defend the Complaint.

3.      On  May 4, 2026, the Plaintiff filed his Request for Entry of Default Pursuant to Fed. R. Bankr. P. 7055 [ECF No. 38; May 4, 2026], supported by the certification of counsel.

4.      On May 5, 2026, the Clerk of this Court entered default against Defendant (the "**Entry of Default**") [ECF No. 40]. The Defendant failed to move to vacate the Entry of Default within thirty (30) days as permitted by Local Rule 108.2(a) or otherwise appear to challenge the Entry of Default.

5.      On June 2, 2026, the Court conducted the pre-trial conference in this Adversary Proceeding.  Counsel for Plaintiff stated on the record that Plaintiff would be seeking a default

---

[2] The Complaint is incorporated by reference.  Capitalized terms not defined herein shall have the meaning ascribed in the Complaint.

judgment against the Defendant.

6.       To date, Defendant has failed to plead or otherwise defend the Complaint. Thus, this Motion for Default Judgment is now ripe for adjudication.

## II. Factual Allegations Admitted

7.       The Complaint alleges that Mr. Barnes and Mr. Chestnut, as directors and officers of the Debtor, engaged in a coordinated scheme to cause the Debtor to make significant avoidable transfers to entities under their control (*i.e.*, the Defendant, as well as Impel Management, Chestnut Consulting, and BW Capital), which in turn transferred such amounts to them individually. Compl. ¶¶ 16, 18, 27.  As to the Defendant, the Complaint sets forth the following causes of action:

   a.       **Count I** seeks the avoidance and recovery of the OMV 2-Year Transfers in the amount of $7,757,163.00 as actual fraudulent transfers under Sections 548(a)(1)(A) and 550;

   b.       **Count II** seeks the avoidance and recovery of the OMV 2-Year Transfers in the amount of $7,757,163.00 as constructive fraudulent transfers under Sections 548(a)(1)(B) and 550;

   c.       **Count III** seeks the avoidance and recovery of the OMV 2-Year Transfers in the amount of $7,757,163.00 as actual fraudulent transfers under Sections 544 and 550 and applicable state law;

   d.       **Count IV** seeks the avoidance and recovery of the OMV 2-Year Transfers in the amount of $7,757,163.00 as constructive fraudulent transfers under Sections 544 and 550 and applicable state law;

   e.       **Count V** seeks the avoidance and recovery of the OMV 1-Year Transfers in the amount of $6,500,163.00 as insider preferences under Sections 547 and 550; and

3

f.   **Count XX** seeks the disallowance of all claims of the Defendant under Section 502(d).

8.   Regarding the control of Mr. Barnes and Mr. Chestnut over the Debtor and connections to the Defendant, the following facts are alleged:

a.   Mr. Barnes and Mr. Chestnut were officers and directors of the Debtor. Compl. ¶¶ 7-8.  The Debtor's bankruptcy petition was authorized by Mr. Barnes as Chairman and Mr. Chestnut as Director and Corporate Secretary. Compl. ¶ 14.

b.   Mr. Barnes and Mr. Chestnut are owners and principals of the Defendant. Compl. ¶¶ 7-8.

c.   The Defendant was the 100% owner of the Debtor.  Compl. ¶¶ 4, 14.  Mr. Barnes and Mr. Chestnut were on the Board of Managers of the Defendant. Compl. ¶ 4.

d.   In turn, the Defendant was 72.5% owned by non-defendant Impel Capital, LLC ("**Impel Capital**").[3]  Compl. ¶ 4.  Mr. Barnes and Mr. Chestnut were the owners and members of Impel Capital.  Compl. ¶ 15.  Mr. Barnes filed Articles of Cancellation for Impel Capital after the conversion of the bankruptcy case to Chapter 7.  Compl. ¶ 15.

9.   The Complaint further describes in detail that Mr. Barnes and Mr. Chestnut engaged in a years-long scheme to cause the Debtor (under their control and direction) to transfer out as much money as possible, to the entities under their control (the initial transferee Defendants) including the Defendant.  Compl. ¶¶ 16, 18, 21 ("drained the Debtor of essentially all of its

---

[3] The Plaintiff reserves the right to file an amended Complaint naming Impel Capital as a defendant should evidence indicate it was an initial or subsequent transferee of any funds at issue.

operating capital"), 22 ("was carried out without any formal board meetings or approvals"). These initial transfers from the Debtor to the Defendant were disguised as management fees, consulting fees, distributions, dividends, success fees, and other fabricated fees. Compl. ¶¶ 16, 18.

10. All of the transfers to the Defendant implicated in Counts I-V are identified by date and amount in Exhibit A to the Complaint. Specifically, the following facts are alleged:

a. OMV Holdings was formed in April 2021 and acquired the Debtor in October 2021. Compl. ¶ 4. Beginning in March 2022 and continuing at regular intervals until January 2024 (one month before the Petition Date), the Debtor made significant lump sum transfers to OMV Holdings when it had the ability to do so. *See* Exhibit A to the Complaint.

b. In April 2023, Loyal Source Government Services LLC ("**Loyal Source**") filed an arbitration case against the Debtor, resulting in an arbitration award of $12 million. Compl. ¶ 28; *see also* Loyal Source Proof of Claim No. 10 (August 16, 2024) filed in main bankruptcy case in the amount of $15,624,242.32. The Debtor's insolvency and financial distress were present at all times relevant to the Complaint. Compl. ¶ 28.

c. On March 27, 2023 and July 6, 2023, the Debtor obtained ERCs in the amounts of $2,520,694.99 and $5,630,552.92, respectively. Compl. ¶ 20. Mr. Barnes and Mr. Chestnut immediately transferred the majority of such amounts to the Defendant and Impel Management. Compl. ¶ 20. As demonstrated on Exhibit A to the Complaint, on March 28, 2023, the Debtor transferred $1,566,070 to the Defendant. On July 7, 2023, the Debtor transferred 2,847,082 out to the Defendant. *Id*.

5

d.  On January 4, 2024, the Debtor transferred $1,000,000 to OMV Holdings. *See* Exhibit A to Complaint.  This was one day prior to the District Court hearing on confirmation of the Loyal Source arbitration award against the Debtor.  *See* Order [ECF No. 46, January 5, 2024] in District Court Case No. 1:23-cv-02889-SAG.

11.  All of the transfers to the Defendant were made for no consideration and without reasonably equivalent value to the Debtor, while the Debtor was insolvent, as part of Mr. Barnes' and Mr. Chestnut's scheme to distribute all of the Debtor's operating cash to entities that they controlled.  Compl. ¶¶ 16, 18, 21, 32, 39, 47, and 55.

12.  Additionally, to the extent that OMV Holdings was a creditor of the Debtor, the OMV 1-Year Transfers were made to an insider and enabled the Defendant to receive more than if such transfers had not been made.  Compl. ¶¶ 62-65.

### III. Basis for Relief

13.  The Court may enter a default judgment against a defendant who fails to defend its case. *U.S. v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982). Rule 55(b) of the Federal Rules of Civil Procedure, as made applicable by Fed. R. Bankr. P. 7055, authorizes the Court to enter a default judgment against the defendant for relief claimed plus costs. A default judgment is appropriate for a party against whom a judgment for affirmative relief is sought and who has failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure. *See, e.g., Home Port Rentals, Inc. v. Ruben*, 957 F.2d 126, 133 (4th Cir. 1992); *Monge v. Portofino Ristorante*, 751 F.Supp.2d 789, 794 (D. Md. 2010) ("default judgment is available when the 'adversary process has been halted because of an essentially unresponsive party'") (compiling sources)

14.  Further, where a defendant fails to respond to the complaint, all factual allegations (other than ones relating to the amount of damages) in the complaint are deemed admitted. *See,*

*e.g.*, *Ryan v. Homecoming Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (default has the effect of admitting the factual allegations in complaint); *Monge*, 751 F.Supp at 794; *S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 422 (D. Md. 2005) ("Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not.") (citation omitted); *Educ. Credit Mgmt. Corp. v. Optimum Welding*, 285 F.R.D. 371, 373 (D. Md. 2012); and Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied") as made applicable by Fed. R. Bankr. P. 7008.

15.     Per Fed. R. Civ. P. 55(b)(1), "If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person." *Id*. (emphasis added).    If the Court considers the entry of default judgment per Fed. R. Civ. P. 55(b)(2), "[d]amages must be proven, and the court maintains discretion over how the amount of damages may be appropriately shown." *See Trans. Dist. Comm. of Hampton Roads v. U.S. Workboats, Inc.*, Civil No. 2:21cv181, 2021 WL 8445262, at *4 (E.D. Va. Sept. 17, 2021) (citing *Monge*, 751 F. Supp. 2d at 794–96, and others). The Court may award damages without a hearing under Fed. R. Civ. P. 55(b)(2) if the record supports the damages requested, including by affidavit or other evidence. *Monge*, 751. F.Supp.2d at 795 (compiling sources concluding that hearing was not required if plaintiff presents sufficient evidence of damages).    As described herein, the Trustee's claim is for a sum certain and that amount is supported by affidavit, such that the judgment by default can be entered against the Defendant under the foregoing provisions. *See* Affidavit of Morgan Fisher, Chapter 7 Trustee for Provizor Federal, Inc. (the "**Trustee's**

**Affidavit**") attached hereto as **Exhibit 1**.

## IV. Relief Requested

16.   In this case, the Defendant has failed to defend and has thus admitted the factual allegations of the Complaint concerning liability for avoidance and recovery of the transfers under Sections 544, 547, 548, and 550, as set forth above.

**A.   Counts I-II**

17.   Section 548(a)(1)(A) provides for the avoidance of a transfer if the debtor made such transfer with an actual intent to hinder, delay, or defraud any entity to which the debtor was or became indebted. 11 U.S.C. § 548(a)(1)(A).  Section 544(b) incorporates avoidance under state law, which likewise provides for the avoidance of transfers made with actual fraudulent intent. *See* Md. Code, Commercial Law, § 15-207.  Actual fraud can be proven based on circumstantial evidence, including a non-exhaustive list of "badges of fraud," motive, the natural consequences and effect of the transfer, preference of one creditor over another, and any other facts that may support an inference of actual intent in the particular case.  *See, e.g., ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 364-94 (S.D. Tex. 2008). Badges of fraud recognized by courts include, but are not limited to, lack or inadequacy of consideration, insolvency or undercapitalization, whether the transfer was at arm's length, secrecy or concealment, a departure from usual methods of business, and a pattern of conduct after the onset of financial difficulties. *See, e.g., In re Babb*, 358 B.R. 343, 350 (Bankr. E.D. Tenn. 2006); *In re Celsius Network LLC*, 669 B.R. 108, 118-119 (Bankr. S.D.N.Y. 2025)[4].

---

[4] "The customary badges of fraud considered by courts include: (1) lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; (6) the general chronology of the events and transactions under inquiry; (7) a questionable transfer not in the usual course of business; and (8) the secrecy, haste, or unusualness of the transaction."

18.     The Defendant has conceded by the Defendant's failure to defend that the Plaintiff has more than sufficiently alleged the elements of actual fraud transfers.  Specifically, the Debtor (under the control of Messrs. Barnes and Chestnut) engaged in a pattern of transactions and course of conduct to transfer the Debtor's operating cash and other funds to the Defendant, an entity that Messrs. Barnes and Chestnut owned and controlled, which was intended to harm the Debtor's creditors.  The Debtor did not receive consideration or value for the OMV 2-Year Transfers.  The Debtor made the transfers in haste and without formal approval.  The Debtor was insolvent when it made the OMV 2-Year Transfers, as it owed a substantial debt to Loyal Source.  The Debtor made transfers of funds from its bank accounts to the direct benefit of the Defendant. These OMV 2-Year Transfers are identified by date and amount on Exhibit A attached to the Complaint and total $7,757,163.00; *see also* **Exhibit 1**, attesting to the OMV 2-Year Transfers to the Defendant as set forth in the records of the Debtor.

**B.    Counts III-IV**

19.     Section 548(a)(1)(B) provides for the avoidance of a transfer if the debtor received less than reasonably equivalent value in exchange for such transfer and was insolvent or rendered insolvent thereby, engaged in a business with unreasonably small capital, or incurred debts beyond the debtor's ability to pay.  11 U.S.C. § 548(a)(1)(B).  Section 544(b) incorporates avoidance under state law, which likewise provides for the avoidance of constructively fraudulent transfers. *See* Md. Code, Commercial Law, §§ 15-204-206.  Whether reasonably equivalent value was received by the debtor on the date of transfer is a two step analysis: (1) did the debtor receive value, and (2) was the payment reasonably equivalent to the value extended.  *See Cohen v. Un-Ltd. Holdings, Inc. (In re Nelco, Ltd.)*, 264 B.R. 790, 813-14 (Bankr. E.D. Va. 1999) (explaining good faith of transferee and whether there was an arm's length transaction between willing parties is relevant to whether reasonably equivalent value was exchanged).  The proper focus is on the net effect of the

transfers on the debtor's estate, the funds available to the unsecured creditors. *In re Jeffrey Bigelow Design Grp., Inc.*, 956 F.2d 479, 484 (4th Cir. 1992).

20.     The Defendant has conceded by the Defendant's failure to defend that the Plaintiff has more than sufficiently alleged the elements of constructive fraud transfers.  The Debtor did not receive any consideration or value for the OMV 2-Year Transfers, which were disguised as management fees, consulting fees, distributions, dividends, success fees, and other fabricated fees. In making the OMV 2-Year Transfers, the Debtor was drained of all operating capital such that it was unable to pay its debts as they became due.  The Debtor did not make the OMV 2-Year Transfers at arm's length, as Messrs. Barners and Chestnut controlled the Debtor and the Defendant.  The Debtor was insolvent at the time of the OMV 2-Year Transfers, as it owed a substantial debt to Loyal Source.  The Debtor made transfers of funds from its bank accounts to the direct benefit of the Defendant. These OMV 2-Year Transfers are identified by date and amount on Exhibit A attached to the Complaint and total $7,757,163.00; *see also* **Exhibit 1**, attesting to the Transfers to the Defendant as set forth in the records of the Debtor.

C.     **Count V**

21.     Section 547(b) provides for the avoidance of a transfer: (1) to or for the benefit of a creditor; (2) on account of an antecedent debt; (3) made while the debtor was insolvent; (4) made within one year of the petition date if the creditor was an insider; and (5) that enables the creditor to receive more than it would if the transfer had not been made.

22.     The Defendant has conceded by the Defendant's failure to defend that the Plaintiff has more than sufficiently alleged the elements of insider preferential transfers.  If the Defendant was a creditor, the Debtor was insolvent within the one-year period and the OMV 1-Year Transfers made by the Debtor to the Defendant enabled the Defendant to receive more than it would have via a distribution in this Chapter 7 bankruptcy case.   The Debtor made transfers of funds from its

10

bank accounts to the direct benefit of the Defendant. These OMV-1 Year Transfers are identified by date and amount on Exhibit A attached to the Complaint and total $6,500,163.00; *see also* **Exhibit 1**, attesting to the Transfers to the Defendant as set forth in the records of the Debtor.

**D.      Amount of Judgment**

23.      "After establishing the Defendants' liability for an actual or constructive fraudulent transfer . . . the Court calculates the amount of damages by determining '***the amount of monies wrongfully received by the various transferees***.'" *In re Fyre Festival LLC*, 611 B.R. 735, 741 (Bankr. S.D.N.Y. 2020) (citations omitted) (emphasis added). In doing so, "courts may rely on financial records reflecting the amount of the transfers made to the transferee." *Id*. (citation omitted).  The Trustee's Affidavit appropriately proves under Fed. R. Civ. P. 55 the amount that may be recovered from the Defendant under Section 550.

24.      Based on all the foregoing, the Court should enter a default judgment in favor of the Trustee and against Defendant for recovery of the value of the OMV Transfers under Section 550(a)(1) made by the Debtor to the Defendant as follows:

> a.      <u>Counts I - IV</u>: judgment in the amount of $7,757,163.00 for the OMV 2-Year Transfers.
>
> b.      <u>Count V</u>: judgment in the amount of $6,500,163.00 for the OMV 1-Year Transfers.

25.      Because the OMV 1-Year Transfers are subsumed within the OMV 2-Year Transfers, the monetary judgment should be in the amount of $7,757,163.00.

**E.      Count XX**

26.      The Court should likewise disallow any proof of claim file by the Defendant under Section 502(d) until the Defendant had paid the amount for which the Defendant is liable.

Dated: June 24, 2026

Respectfully submitted,

*/s/ Richard M. Goldberg*
Richard M. Goldberg, Fed. Bar No. 07994
Daniel J. Zeller, Fed. Bar No. 28107
SHAPIRO SHER GUINOT & SANDLER
250 W. Pratt Street, Suite 2000
Baltimore, MD 21201
Tel: (410) 385-4274
Fax: (410) 539-7611
rmg@shapirosher.com
djz@shapirosher.com

*Counsel to Plaintiff Morgan Fisher,*
*Chapter 7 Trustee*

12

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY on this 24th day of June, 2026, I reviewed the Court's CM/ECF system and it reports that an electronic copy of the foregoing will be served electronically by the Court's CM/ECF system on the following:

**Richard J. Hackerman, Esquire** - Richard@RichardHackerman.com, 6923530420@filings.docketbird.com; Hackerman.RichardR106256@notify.bestcase.com

**Martinis M. Jackson, Esquire** - martinis.jackson@jlegalservices.com

I HEREBY FURTHER CERTIFY on this 24th day of June, 2026, copies of the foregoing were served via first class mail, postage pre-paid on the following:

OMV HOLDINGS, LLC
c/o The Corporation Trust Incorporated
2405 York Road, Suite 201
Timonium, Maryland 21093

OMV HOLDINGS, LLC
6700 Alexander Bell Drive, Suite 200
Columbia MD 21046
Attn: Lamar Barnes, Authorized Person

/s/ *Daniel J. Zeller*
Daniel J. Zeller

13